[No. 4144.   Decided March 13, 1902.]

RALPH G. SHOEMAKER, *Respondent,* v. BRYANT LUMBER & SHINGLE MILL COMPANY, *Appellant.*

27   637
38   292
27   637
f42   95

MASTER AND SERVANT — INJURY TO SERVANT — DEFECTIVE MACHINERY — ASSUMPTION OF RISK — OBVIOUS DANGER.

An employee cannot be deemed to have assumed the risk of defective machinery, from the mere fact of knowledge of the defect, when such knowledge would not warn him of the danger that was likely to result therefrom.

SAME — DUTY OF MASTER TO WARN.

The failure of the master to warn the servant of the dangers incident to defective machinery, when the servant could not, by the exercise of reasonable diligence, know such dangers, constitutes negligence on the master's part.

SAME — SUFFICIENCY OF EVIDENCE.

Where the evidence shows that a conveyor of bolts in a shingle mill had broken lugs for holding the bolts, which some-. times allowed them to fall, that the perfect lugs never allowed the bolts to fall, and that the knee bolter placed a bolt upon a broken lug in the conveyor just before a bolt fell, the evidence

is sufficient to establish that the bolt dropped back on account
of such broken lug, although no one saw it start to fall.

WITNESSES — CROSS-EXAMINATION — CREDIBILITY.

Where a witness for defendant company in a personal injury
case has on cross-examination testified that he was an officer and
stockholder in the defendant company and would have to pay his
proportion of whatever judgment was rendered against his com-
pany, it was not error to permit further cross-examination as to
whether, if judgment were recovered against his company, some
other company would have to pay the judgment, since such ex-
amination was permissible for the purpose of affecting his credi-
bility.

TRIAL — COMMENT ON EVIDENCE — NECESSITY OF OBJECTIONS.

Error of the court in commenting on the testimony during the
trial, when unobjected to, cannot be urged as error after the
verdict.

APPEAL — ERRORS NOT SHOWN IN RECORD.

Improper argument of counsel cannot be urged on appeal,
when there is nothing in the record showing the impropriety.

INSTRUCTIONS — SUFFICIENCY OF OBJECTIONS.

Errors alleged as to instructions in that they improperly
state the law, are confusing, conflicting, misleading and present
false issues, are too general to be considered, when they do not
point out the respects in which they are erroneous.

SAME.

An instruction which charges the jury that if they find the
dangers were known to plaintiff, or could have been known by
the exercise of reasonable diligence, "at the time he went to work
and at the time he was injured," then they should find for de-
fendant, is not objectionable as restricting the time when plain-
tiff would be bound by knowledge of danger to that acquired
"at the time he went to work," but means if he had knowledge
of the danger at or before the time of the injury.

Appeal from Superior Court, King County.—Hon.
George Meade Emory, Judge. Affirmed.

*Wilshire & Kenaga,* for appellant.

*Lewis, Hardin & Albertson,* for respondent.

The opinion of the court was delivered by

MOUNT, J.—Action for damages for personal injuries. Plaintiff below recovered a judgment against defendant for $3,100 on account of injuries received in defendant's shingle mill. Defendant appeals.

The gist of the cause of action, as alleged, is negligence on the part of the defendant. The negligence consisted in maintaining a defective piece of machinery, which defect and the danger incident thereto, were known to defendant and not known to plaintiff, and they were not the usual risks incident to the employment of plaintiff. The plaintiff was an experienced knee-bolter. He was employed by defendant on December 26, 1900, and was not notified of any defects in defendant's shingle mill. Plaintiff began working as a knee-bolter in the defendant's mill on the day he was employed, and he was injured on the third day thereafter. While engaged in his employment a block of wood known as a "shingle bolt" fell from the conveyor in the rear of plaintiff and struck another block of wood on which he was operating, knocking his left hand into a saw, which severed all the fingers and a part of the left hand. The conveyor was an appliance used for carrying shingle bolts from the saw at which plaintiff worked up to the floor above. It consisted of a trough twenty inches wide, about thirty feet long, and with sides about twenty-four inches high. It ran at an angle of about forty degrees from the floor on which plaintiff worked to the floor above. It was placed at right angles to the table which contained the saw, and was at the right of plaintiff, and ran to his rear while he was at work. In the bottom of this trough there was an endless chain, containing large, flat, iron links, on which were fastened, every four feet, two lugs, or upright cast iron pieces, five inches long, sometimes called "buckets." This

chain, revolving over sprocket wheels at the top and bottom of the conveyor, caused the shingle bolts placed in the conveyor at the bottom by the knee-bolter to slide up the trough to the floor above. Near the bottom of the upper floor was an arrangement called a "gate," which was hung at one end on hinges attached to the upper floor, the other end resting on the conveyor in such a manner that shingle bolts passing up the conveyor raised the gate until the bolt was passed under it, and then the end of the gate lying on the conveyor would fall behind the bolt and prevent it rolling back down the conveyor. At the time plaintiff was employed and went to work, several of the lugs or buckets on the conveyor chain had become broken, leaving short stubs. The bottom of the trough of the conveyor crossed the plane of the knee-bolter table about three inches to the right of the table, and at the edge of the table toward the operator about three inches higher than the table. At the other side of the table it was below the level of the floor. The side of the trough of the conveyor toward the operator came down to within twenty-four inches of the table. From that point on down it was open to permit bolts to be slid from the knee-bolter saw into the conveyor. It was the duty of the knee-bolter to slide the shingle bolts from the saw into the conveyor. The speed of the conveyor chain was about the speed of the ordinary walk of a man. Plaintiff had not before worked in a mill where there were broken lugs on the conveyor chain. He had noticed bolts falling back down the conveyor, but none had fallen therefrom or upon the table at which he was at work. It was common in this mill for the bolts to fall down the conveyor trough, and the number thus falling was estimated at about one per hour. On two or three occasions previous to the time plaintiff was employed, bolts had fallen down the trough

and struck upon the table.  On one occasion an injury
was narrowly averted, and on another a bolt rolled into the
saw and broke the saw.  Plaintiff knew nothing of this;
defendant did.  The conveyor chain was in view of the
plaintiff, to his right, while he was at work.  Plaintiff
had noticed broken lugs, and immediately before the
injury saw a bolt going up on a broken lug.  Shortly
after this a bolt fell down the conveyor trough, rolled along
the table, struck a block which he was about to saw and
knocked his hand into the saw, which severed the left
hand, except the thumb.  The output of the mill depended
upon the rapidity with which the knee-bolter prepared the
bolts for the machine saw.  There was but one knee-bolter
in this mill, and plaintiff's duties required him, after saw-
ing a bolt and sliding it into the conveyor, to reach be-
hind for another piece of timber.  His work was rapid
and kept him busy.  It was the duty of the foreman of the
mill to keep the machinery in repair.  There was some
dispute in the evidence as to whether any of the lugs
were broken at the time, and also as to the duty of the
knee-bolter as to how the bolts should be placed in the
conveyor.  But the facts above outlined are substantially
correct, and sufficient for the purpose of this case.  At the
close of the plaintiff's evidence, defendant moved the
court for a non-suit upon the ground of failure of proof,
and that the evidence showed contributory negligence.
This motion was denied.  At the close of all the evidence,
defendant moved the court to discharge the jury and
direct a verdict for defendant on the ground that the
plaintiff had knowledge of the risk and assumed it.  This
motion was also denied.

The questions presented by these two motions are closely
allied, and we shall consider them together.  The respond-
ent's case rests upon the allegation of defective machin-

41—27 WASH.

ery, and failure of appellant to warn him of the same, and that respondent did not know, and, with reasonable diligence, could not have known, of the defects and dangers incident thereto. The evidence of plaintiff clearly showed that the machinery was defective. It also showed that he did not notice it particularly, and did not know of the danger incident thereto; that, with proper lugs on the conveyor chain, blocks would not roll back; that blocks rolling back were not necessarily dangerous, unless they left the conveyor trough and rolled upon the knee-bolter table; that respondent had not seen a bolt leave the trough and roll upon the table, and was not informed that they had ever done so; that respondent had not worked in a mill where the lugs of the conveyor chain were broken. It is true, the respondent testified that, if a block fell after it went up the trough, "it would simply have to fall into the elevator until it got down below to the end of the sides of the elevator, then it could jump out." But he nowhere said he had seen them jump out, or knew that there was danger. In other words, there is no evidence that the danger was apparent and obvious. The fact that these blocks could or might jump out was not sufficient to show that the danger was apparent. Danger could not be apparent when no one suspected it. The superintendent of the mill testified, in substance, that, if the respondent had seen bolts falling down the trough of the conveyor from time to time, and had not seen one fall out, he would probably not know of the danger. Others testified to the same effect. There can be no assumption of risk unless the danger is apparent. Employees must use their faculties for their own preservation, notwithstanding the employer is bound to furnish a reasonably safe place and reasonably safe appliances with which to work. While this rule requires the use of the ordinary faculties, an employee is not re-

quired to make a minute examination to discover whether his employer has discharged his duty in this respect; and, even where the machinery is defective, the defect must be such as to make it apparent that there is danger. Wood, Master & Servant (2d ed.), p. 763. Not every defective piece of machinery is dangerous, nor is danger always apparent from defective machinery. While it is true that the plaintiff was bound to take notice of the broken lugs or buckets of the conveyor chain, and while he actually knew that these broken lugs would drop bolts down the conveyor trough, it does not follow that he knew, or with ordinary diligence could have known, that he was in any more danger than when the chain was perfect, or that there was danger not incident to the employment. Mere knowledge of the defect will not always be sufficient to charge the servant with an assumption of the risk. Such knowledge must convey the danger that may or is likely to result from the defect. Bailey, Master's Liability to Servants, p. 184; Wood, Master & Servant, pp. 763, 764.

. The defendant did not know of this danger. Others who were experienced testified he probably would not know. It was, therefore, the duty of the superintendent in charge of the machinery to inform him what had previously occurred, and advise him of the increased risk. All the cases cited by appellants upon the question of assumed risk go to the question where the danger is apparent and obvious, and are consequently not in point here. That the broken lugs permitted bolts to roll down the conveyor trough is beyond question, and respondent was bound to know that these bolts frequently rolled back; but he was not bound to know that they had or would roll out upon the table where he was working, because usually they did not do so. This was the real danger, and this danger was latent, and could not be

known excepting from information given him, or until he had been there sufficiently long for such an occurrence to happen. That it was liable to happen was known to the defendant, because it had happened upon two or three previous occasions. It was not known to the respondent.

It is argued that because no one saw the bolts start to fall, and no evidence was introduced that this particular bolt which caused the injury did not fall from a perfect lug or bucket, therefore, the plaintiff failed to make a case for the jury. Our attention is called to the case of *Patton v. Texas & P. R. Co.*, 179 U. S. 658 (21 Sup. Ct. 275), and kindred cases, where the supreme court of the United States used the following language:

"Where the testimony leaves the matter uncertain and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to guess between these half a dozen causes and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion."

The testimony here did not leave the matter uncertain. It was clearly shown that the block of wood which fell from the conveyor caused the injury. It was also shown that these blocks could not fall from a perfect lug, and plaintiff testified that the last block he placed in the conveyor started up the trough on a broken lug. The danger was not obvious, and plaintiff was not informed of it. All these facts were clearly proven. There was little or no dispute of any of them. The negligence consisted of two elements: (1) Defective lugs; and (2) failure to notify plaintiff of the danger of blocks rolling out of the conveyor upon the table. Both motions were properly denied.

It is alleged as error that the court permitted counsel for respondent to ask the witness Edward Verd the following question: "Is it not a fact that, if judgment is recovered against this company, some other company will have to pay this judgment?" The circumstances leading up to this question are substantially as follows: Mr. Verd was called as a witness for defendant (appellant here). He testified to the merits of the case. On cross-examination respondent's counsel, for the purpose of affecting his credibility and showing interest, asked him if he were not the secretary of the defendant company. The witness answered that he was and that he owned about one-tenth of the capital stock of the company. Witness was then asked, if a judgment should be rendered against the company, if he would have to pay his proportion of it. The answer was in the affirmative. He was then asked, "Would your company have to pay it?" His answer was, "Yes, sir." Thereupon the question above quoted was asked. The fact that the defendant company was insured, or had made previous arrangements protecting it against damages resulting to its employees, was clearly immaterial to the main issue as to the liability of the defendant. But the interest of the witness Verd, as affecting his credibility, was material to go to the jury. The question objected to went directly to the credibility of the witness. He had already said that, if a judgment was obtained against the defendant, he would have to pay his proportion of it. This showed that he had a financial interest in the case. If he should answer the question in the negative, the evidence of interest, as affecting credibility, would be for the jury to consider. If he should answer in the affirmative, as he did in this instance, the inconsistent statements of the witness were proper to go to the jury, as affecting his credibility and the accuracy of

his testimony generally. Cross examination of this character rests within the sound discretion of the trial court. Under the circumstances of this case, the trial court did not abuse its discretion.

It is alleged as error that the trial court made a comment upon the facts in the presence of the jury. While a witness for defendant was on the stand, defendant asked the following question: "Now, so nearly as you can state to the jury, what are the usual risks in regard to these bolts going up there, so far as danger is concerned, that would be apparent or obvious?" This question was objected to upon the ground that it called for a conclusion, and not for a fact. The court, passing upon the objection, said: "I think so. You practically ask the witness to give an opinion that involves the same thing that the court had no little trouble in deciding." No objection was made to the remark of the court, and his attention was not called to the remark as being a comment. While the remark may have been error, if properly objected, to yet apparently no attention was paid to it by either the court, counsel, or the jury. Since no opportunity was given the court to correct the error, if it was error, and no objection made to it until after verdict, it was too late then to raise the question.

It is alleged as error that counsel for respondent, in his argument to the jury, made use of a piece of broken iron which had not been received in evidence. There is nothing in the record to show any such state of facts. If any such existed, it should have been made a part of the record, as was done in the case of *Cohen v. Drake,* 13 Wash. 102 (42 Pac. 529), which is relied upon by the appellant upon this point. Counsel cannot be heard upon a question not presented in the record.

In appellant's brief, under paragraph 7, errors are claimed to have been made by the court in the giving and refusing to give instructions. These errors are alleged as to a number of instructions, and are general, such as "They improperly state the law; are confusing, conflicting, misleading, and present false issues not pleaded or proven." No attempt is made to point out the respects in which they do not state the law or are confusing, etc., except as to instruction No. 7, which will be considered later. These assignments are too general, and for this reason we shall not examine them. As to instruction No. 7, it is complained that the court limited the time at which respondent might have learned of the dangers incident to his work "to the time he went to work," and counsel say:

"If an employee learns of a new and obvious danger, of which he is not aware at the outset of his employment, and continues to work thereafter, the jury should not be denied the right to charge him with such knowledge."

This rule is, no doubt, correct. The language of the instruction is:

"Still, if you find, gentlemen of the jury, that these defects and these dangers were known to the plaintiff, or that by the exercise of reasonable diligence on his part he ought to have known them, at the time he went to work and at the time he was injured,  .  .  .  it will be your duty to find a verdict for defendant in the case."

This instruction is not subject to the criticism made upon it. The language of the instruction does not exclude knowledge of the danger acquired by plaintiff after he went to work, but says, if the danger was known, or ought to have been known, at the time he went to work and *at the time of the injury,* plaintiff cannot recover. The instruction might have been clearer if the phrase "at the time he went to work" had been omitted, for, if he had

knowledge at the time he went to work, he must have had it at the time of the injury. If he had knowledge of the danger at or prior to the time of the injury, and continued in the employment, he could not recover. This was the effect of the instruction.

There is no reversible error in the record. The cause will therefore be affirmed.

Reavis, C. J., and White, Dunbar, Fullerton and Hadley, JJ., concur.