[No. 8755. Department One. November 11, 1910.]

OSCAR LAHTI, *Appellant*, v. HENRY ROTHSCHILD *et al.*,
*Respondents.*[1]

MASTER AND SERVANT—NEGLIGENCE—APPLIANCE—EVIDENCE—SUFFI-
CIENCY. It is actionable negligence to use a large link chain for
holding a sling load of small dimension lumber, in lowering the
same into the hold of a ship, whereby some of the pieces slipped
from the load and fell upon a stevedore, where it appears that it
was suitable only for large timbers, and it was customary to use a
small chain, one witness testifying that difficulty was encountered
in its use and complaint made to the foreman.

MASTER AND SERVANT—ASSUMPTION OF RISKS—COMPREHENSION OF
DANGER. In such a case, an injured stevedore of long experience
did not assume the risk, as a matter of law, where he testified that
he had never had any experience with a chain of that size in
handling small dimension lumber and did not know that it would
not hold the pieces securely, and he had worked five or six days
with the chain in question without any occurrence that would sug-
gest the danger of pieces slipping from the load.

Appeal from a judgment of the superior court for Che-
halis county, Irwin, J., entered November 27, 1909, in favor
of the defendants, upon withdrawing the case from the con-
sideration of the jury, dismissing an action for personal in-
juries sustained by a stevedore in loading a ship. Reversed.

*Dan Pearsall* and *A. Emerson Cross*, for appellant.

*J. B. Bridges*, *Theo. B. Bruener*, and *John P. Hartman*,
for respondents.

PARKER, J.—This action was commenced by the plaintiff to
recover damages for personal injuries which he alleges resulted
to him from the negligence of the defendants. The cause pro-
ceeded to trial before the court and a jury, when, at the close
of the evidence produced in behalf of the plaintiff, upon motion
of defendants' attorneys, the court took the case from the con-
sideration of the jury and entered a judgment in defendants'

[1]Reported in 111 Pac. 451.

favor, deciding, as a matter of law, that the defendants were not guilty of negligence resulting in plaintiff's injury, and that such injury was the result of his contributory negligence and risks assumed by him.   From this disposition of the cause, the plaintiff has appealed.

The evidence produced by appellant shows, in substance, the following:   Respondents are engaged in the stevedoring business at Aberdeen under the firm name of Rothschild & Company.    On September 14, 1908, and for some days prior thereto, they were engaged in loading a ship with lumber at a wharf at Aberdeen.   During this time, and prior thereto, the appellant was employed by them, and it was while so employed in the hold of the ship that he was injured. The loading was being carried on by hoisting the lumber from the wharf and lowering it into the hold of the ship with a hoisting engine, boom and tackle. The lumber being loaded at the time of the injury to appellant, and for five or six days prior thereto, consisted of pieces varying in lengths from ten to twenty-six feet, and also of the varying dimensions of 2x3, 2x4, 4x4, 2x6, and 1x12, and occasionally of 6x12.   The lumber would be piled on the wharf so that one end of all the pieces would be even, in such quantity as to make a suitable load for hoisting and lowering into the hold. A chain, called a sling, would then be placed around the load nearer to the even end than the other, to which would be attached the cable or rope from the engine.   The engine then being started raised the load, and when suspended it would hang in a slanting position with the even end higher than the other.   This enabled the load to pass down through the hatch into the hold, the hatch being too small to otherwise admit the load.   When the load was lowered into the hold and before it came to rest upon the floor or other lumber there, it was the duty of appellant to push it under the deck clear of the hatch, when it would be lowered upon the floor or other lumber, and then be stowed away.   On September 14, 1908, while appellant was so employed, a load was lowered into the

hold, appellant standing clear of the hatch under the deck ready to receive it as usual. When the uneven end of the load had come to rest upon the floor he passed around the even end, which was then still suspended in the sling, and when he was about to start to push it under the deck, four pieces, ten or twelve feet long, slipped out of the top of the load, falling on appellant and causing the injury for which he claims damages. The chain used for the sling was composed of large links, about three inches wide and four inches long.

The evidence tends to show, and would warrant the conclusion, that the falling of the pieces from the sling was caused by the large links composing the chain, which prevented its being fastened around the load as tight as it could have been if composed of small links; that a small linked chain would have drawn tight around the load by the weight of the load, the hook on the end of the chain being hooked around the chain above the load, which hook would readily slip down upon a small chain, but not upon a large chain like this one; that while a large chain was suitable for handling large timbers, it was not suitable for handling pieces of this size; and that it was not the custom to use such a large link chain for this size pieces, but it was customary to use a small link chain for such pieces. One witness, working on the wharf, said they had difficulty in fastening the load with the chain, and made some objections to the boss about it. This was unknown to appellant. While appellant was a longshoreman of considerable experience, he testified that he never knew of the use of a large link chain like this one in loading lumber of this size, that he never had any experience in the use of a chain of this large size with small dimension lumber like this, and did not know that such a chain would not securely hold such lumber. Appellant saw this chain in use handling lumber of these dimensions for five or six days, during which time no serious consequence resulted from its use, so that he

gained no knowledge of the dangers incident to its use during that time.

Learned counsel for appellant contend that the use of the large link chain for handling this lumber, and the evidence tending to show that it was not suitable for that purpose, was a sufficient showing of negligence on the part of respondents to call for the submission of that question to the jury. This contention we think is well founded, unless it can be held, as a matter of law, that appellant assumed the risk incident to the use of the chain because of his knowledge of such use and the danger thereof. It seems to us that a jury might well be justified in believing from this evidence that the risk incident to the use of this large link chain was extraordinary. That is, that it was a risk which could have been obviated by the exercise of reasonable care on the part of respondents. 1 Labatt, Master and Servant, § 270. Hence, its use might justify a finding of negligence against respondents, though it may be conceded that it would not be such negligence but that liability therefor could be obviated by appellant's assuming the risk. Now, can it be said, as a matter of law, upon this record, that appellant assumed this risk, supposing that the jury might conclude that the risk was extraordinary. This question must be answered in the light of the evidence touching appellant's knowledge of the use of the chain, and also his knowledge of the danger incident to its use. Of course, he knew of the use of the chain, but before he can be charged with assumption of the risk, it must appear that he comprehended the danger as well as knew of the physical conditions. Bailey, Master's Liability for Injuries to Servants, 184; Wood, Law of Master and Servant (2d ed.), § 376; *Shoemaker v. Bryant Lum. & Shingle Mfg. Co.*, 27 Wash. 637, 68 Pac. 380.

In 1 Labatt on Master and Servant, § 271, the rule is stated as follows:

"An extraordinary risk, it is said, is not assumed unless it is, or ought to be, known to and comprehended by the servant,

or—as the same conception may also be expressed in logically equivalent terms—where the servant is chargeable neither with an actual nor a constructive knowledge and comprehension of the risk."

Learned counsel for respondents contend, in substance, that the evidence of appellant's experience as a longshoreman is sufficient to impute to him a comprehension of the dangers of using this large link chain, and that the trial court was justified in so determining as a matter of law. It is true that appellant appears to be a longshoreman of considerable experience. He tells us in his testimony, however, that he never had experience in the use of a chain of this size in handling pieces of these dimensions, and did not know that such chain would not securely hold a sling load of such pieces. We have seen that he worked there five or six days under these conditions without anything occurring that would suggest such danger to him. If he comprehended, or was bound to comprehend, such danger, it was only because of his general knowledge of, and experience in, the business. It seems to us the danger was not so apparent that it can be decided, as a matter of law, that a reasonable person in his position and with his knowledge and experience was bound to know and comprehend the risk incident to the use of this chain. We think reasonable minds might differ upon this question, and that it was therefore a question for the jury. We conclude that the learned trial court erred in taking the case from the jury at the close of appellant's evidence.

The judgment is reversed, with instructions to award appellant a new trial.

RUDKIN, C. J., MOUNT, FULLERTON, and GOSE, JJ., concur.