[No. 11948. Department One. September 17, 1914.]

## MOY QUON, *Guardian etc., Respondent*, v. FURUYA COMPANY, *Appellant*.[1]

TRIAL—MISCONDUCT OF COUNSEL—SHOWING INDEMNITY INSURANCE. In a personal injury case, the rule that the wanton intrusion of the fact that defendant carries liability insurance is such misconduct of counsel as to warrant reversal, does not override the rule that a party may cross-examine adverse witnesses touching every relation tending to show interest or bias.

WITNESSES—CROSS-EXAMINATION—CREDIBILITY—INTEREST OR BIAS. In an action for personal injuries, it is not error, on cross-examination of a witness for defendant, to question him touching his connection as agent for an indemnity company with which defendant carried liability insurance, as showing interest or bias affecting his credibility.

MUNICIPAL CORPORATIONS — STREETS — NEGLIGENT USE—COLLISION WITH AUTOMOBILE—PROXIMATE CAUSE—INSTRUCTIONS. In an action for personal injuries sustained by a pedestrian struck by an automobile, an instruction is not erroneous in that it failed to tell the jury that, although they should find the defendant guilty of negligence in running down the plaintiff and in approaching the crossing without sounding a bell, gong or horn, it must find such negligence the proximate cause of the injury before plaintiff could recover, where the instruction, while not so advising the jury in terms, was qualified by the statement that plaintiff could not recover if the jury found the injury due to his own contributory negligence.

SAME. In such a case, an instruction is not erroneous in failing to tell the jury that violation of the speed ordinance must be found the proximate cause of the accident, where it recited that, if the jury found that plaintiff was injured by the automobile, and that it was driven in excess of the speed ordinance, defendant was guilty of negligence and plaintiff should recover for the injury, unless it was found that his negligence contributed to the injury.

APPEAL—REVIEW—ERROR INVITED BY APPELLANT. Error cannot be predicated upon the giving of instructions incorrectly stating the rule of last clear chance, where appellant's requested instruction was fully as objectionable as the instructions given.

MUNICIPAL CORPORATIONS — STREETS — NEGLIGENT USE — AUTOMOBILES—LAW OF ROAD—INSTRUCTIONS. An instruction is not erro-

[1]Reported in 143 Pac. 99.

neous in that it assumed that appellant had no right to drive his automobile on the left-hand side of the street, since, though having the right to the use of any part of the street, injury resulting from a violation of the law of the road, constitutes negligence *per se*.

APPEAL—REVIEW—HARMLESS ERROR—INSTRUCTIONS. In an action for personal injuries sustained by a pedestrian struck by an automobile, it is not prejudicial error that the court, after correct instructions defining contributory negligence, in response to a remark of counsel for plaintiff, "that wouldn't be true if they were exceeding the speed limit," stated that that would be taken into consideration with the other instructions as to whether there was a violation of the speed limit, and that if defendant was violating the ordinance, the law would conclusively presume the defendant guilty of negligence, where the court had already instructed as to the reciprocal rights and duties of the parties, and clearly intended that the instruction should be taken into consideration with those already given.

DAMAGES — PERSONAL INJURIES — EXCESSIVE VERDICT. A verdict for $5,000, for personal injuries sustained by a pedestrian struck by an automobile, is not excessive, where plaintiff sustained a fracture of the skull, requiring the entire removal of a portion thereof, and developed epilepsy as a result of the injury, the final result of which is unknown to the physicians.

Appeal from a judgment of the superior court for King county, Pendergast, J., entered May 23, 1913, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a pedestrian struck by an automobile. Affirmed.

*Brightman, Halverstadt & Tennant*, for appellant.

*Kerr & McCord*, for respondent.

ELLIS, J.—Moy Quon, as guardian *ad litem*, brought this action to recover damages from the defendant for personal injuries sustained by Moy Sue, an incompetent person, through being struck by the defendant's automobile. For convenience, Moy Sue will be referred to throughout as plaintiff and respondent. The accident happened at the intersection of Fourth avenue south and Jackson street, in the city of Seattle. The complaint charged that the automobile was being operated by defendant's driver at an excessive rate of

speed, and that no warning was given of its approach. The defendant's answer admitted that the automobile was in charge of its driver and collided with the plaintiff at the place in question, denied the charges of negligence, and set up, as an affirmative defense, contributory negligence on the part of the plaintiff. This defense was traversed by the reply. No question is raised as to the sufficiency of the evidence to take the case to the jury. We shall, therefore, point out only its salient features.

Jackson street runs east and west; Fourth avenue north and south. The automobile came down Fourth avenue from the north, and swung into Jackson street on the north side in a wide curve, to pass up Jackson street to the east. The plaintiff had left the sidewalk on Fourth avenue, near the intersection of these two streets, when he was struck by the automobile. The driver testified that he first saw the plaintiff when about thirty or forty feet from him; that the plaintiff was walking slowly, with his head down and his hands in his pockets; that the machine was running from ten to eleven miles an hour; that he sounded the horn and the plaintiff started back, when the machine struck him. Witnesses for the plaintiff testified that the speed of the automobile was from fifteen miles to twenty miles an hour; that no horn was sounded or other warning given, and that the speed of the automobile was such that, after striking the plaintiff, it skidded a considerable distance, and came to a standstill on the other side of Jackson street, near the curb. The plaintiff testified that he first saw the automobile when it was about thirty feet from him. Ordinances of the city in evidence limit the lawful speed at the place in question to eight miles an hour going upgrade, and four miles an hour going downgrade, The plaintiff's skull was fractured and he was otherwise severely bruised. He was removed first to the city hospital, where he remained for nine days, then to Minor hospital, where he remained until about December 1, then to Broadway hospital, where he remained until December 15, when he was

taken in charge by his brother.  He was operated upon for a depressed fracture of the skull.  A piece of his skull was entirely removed, so that the scalp comes in contact with the membrane of the brain.  During much of the time while he was in the hospitals, he was in a semi-conscious condition. He has developed epilepsy, which the doctors attribute to the injury.  The trial resulted in a verdict in favor of the plaintiff for the sum of $5,000.  Defendant's motion for a new trial was overruled, and judgment entered accordingly. The defendant appeals.

The first claim of error is based upon the following incident:  One McKee, a witness for the appellant, testified that the assistant manager of the appellant had visited the respondent in the hospital and propounded to him certain written questions; that he, McKee visited the respondent four or five times, on the last visit, November 1, 1912, asking him the same questions.  Afterwards, he reduced what he claimed were the respondent's answers to writing, and, upon the trial, was permitted to read or detail the substance of these answers to the jury.  While he was testifying, respondent's attorney interjected the following question:  "You were up there as the agent of the insurance company, trying to settle this case?"  A. "Yes, sir."  Q. "That is what you are here for now?"  A. "Yes, sir.  Exactly."  After McKee had finished his direct testimony, respondent's attorney, on cross-examination, developed the fact that McKee was claim agent for the International Casualty Insurance Company, with which the appellant carried liability insurance, and visited the respondent in that capacity.  When the first question was asked touching this matter, counsel for the appellant moved to discharge the jury and continue the case for trial to a new jury.  The request was refused.  The appellant contends that the judgment should be reversed for this reason, if for no other.

In a personal injury suit, the fact that the defendant carries liability insurance is wholly immaterial on the main

issue of liability. Being essentially prejudicial to the defendant, its wanton intrusion by the plaintiff is positive error constituting ground for reversal. This is the established rule in this state. *Iverson v. McDonnell,* 36 Wash. 73, 78 Pac. 202; *Lowsit v. Seattle Lumber Co.,* 38 Wash. 290, 80 Pac. 431; *Stratton v. Nichols Lumber Co.,* 39 Wash. 323, 81 Pac. 831, 109 Am. St. 881; *Westby v. Washington Brick, Lime & Mfg. Co.,* 40 Wash. 289, 82 Pac. 271; *Birch v. Abercrombie,* 74 Wash. 486, 133 Pac. 1020, 135 Pac. 821; *Shay v. Horr,* 78 Wash. 667, 139 Pac. 604. This rule, however, was never intended to override the equally positive and salutary principle that a party has the right to cross-examine the witnesses produced by his adversary touching every relation tending to show their interest or bias. Many facts wholly immaterial, and even positively prejudicial, on the main issue may be material as touching the credibility of a witness. When a party offers a witness, the relations of that witness to the thing in issue and his interest in the result become material as affecting his credibility. It is universally held that these things may be developed on cross-examination. The supreme court of Pennsylvania, touching a situation closely parallel to that here presented, has said:

"It is always the right of a party against whom a witness is called, to show by cross examination that he has an interest direct or collateral in the result of the trial, or that he has a relation to the party from which bias would naturally arise. Such an examination goes to the credibility of the witness. *Ott v. Houghton,* 30 Pa. 451; *Batdorff v. Bank,* 61 Pa. 179. The right is not to be denied or abridged because incidentally facts may be developed that are irrelevant to the issue and prejudicial to the other party. This chance the party takes when he calls the witness.

"The defendant's witness in his examination in chief had testified that he was attorney for it. This was but a partial disclosure of facts that might create a bias, and it was competent for the plaintiff to show the full extent of the witness' relation to the parties in interest in defending the action. The defendant opened the door for this inquiry, and, as long

as it was conducted in good faith for a legitimate purpose, the plaintiff was within his rights." *Lenahan v. Pittston Coal Min. Co.*, 221 Pa. 626, 70 Atl. 884, 885.

The following language of the Federal circuit court of appeals, sixth circuit, is also directly pertinent:

"The plaintiff did not seek to introduce the fact that the defendant was carrying employers' liability insurance. The matter was brought out upon cross examination, and properly and necessarily brought out. Mr. Furniss testified that he had telephoned Mr. Collier to send a physician to assist Dr. Wadlington, and Dr. Burns was recommended. Dr. Burns stated that he was employed through Mr. Collier by the insurance company to go to the city hospital in Whitford's case. The defense having thus brought Mr. Collier into the case, counsel for plaintiff had the right to ask, and the jury were entitled to know, who Mr. Collier was, and how this insurance company came to send Dr. Burns to the city hospital, as reflecting upon the precise position Dr. Burns occupied both as a physician and as a witness." *Wabash Screen Door Co. v. Black*, 126 Fed. 721, 725, 6.

See, also, *Genest v. Odell Mfg. Co.*, 75 N. H. 509, 77 Atl. 77.

This court has repeatedly sustained the same latitude in cross-examination of witnesses, and also in the examination of jurors on their *voir dire*. *Shoemaker v. Bryant Lumber etc. Co.*, 27 Wash. 637, 68 Pac. 380; *Perry v. Centralia*, 50 Wash. 670, 97 Pac. 802; *Hoyt v. Independent Asphalt Paving Co.*, 52 Wash. 672, 101 Pac. 367; *Armstrong v. Yakima Hotel Co.*, 75 Wash. 477, 135 Pac. 233. Here the appellant, through its assistant manager, and the casualty company, through its claim agent, had plied the injured man, while he was in the hospital, with carefully written questions, and the claim agent was thereafter produced by the appellant as a witness for the purpose of discrediting the respondent's testimony. The claim agent also interviewed one of the respondent's witnesses, and took the stand for the purpose of discrediting his testimony. In pursuing this course, the appellant was acting entirely within its rights, but it thereby waived the immunity from inquiry as to its liability insur-

ance.  By producing the agent of the casualty company as
its witness, the otherwise immaterial fact of insurance be-
came a material factor going to the interest or bias and con-
sequent credibility of this witness.  The distinction between
the case here presented and those relied upon by the appel-
lant is found in the fact that in those cases the matter of in-
surance was first intruded into the trial without reasonable
excuse.  In the case here, it was not only proper, but neces-
sary that the jury be advised of the relation of the witness
and his consequent interest in the suit, as a matter clearly
bearing upon the credibility and weight of his testimony.
We find no error of which the appellant can reasonably com-
plain in the latitude permitted by the court in the cross-ex-
amination.

It is next claimed that the court erred in giving an in-
struction which recites, in substance, that an ordinance of
the city of Seattle provides than no person shall drive an
automobile upon approaching a pedestrian, or approaching
a street intersection, or passing around a corner, without
sounding a bell, gong or horn.  The instruction then recites
that the plaintiff alleges in his complaint that he was run
down by the defendant's automobile at the intersection of
Jackson street and Fourth avenue south, and that, in ap-
proaching the crossing, the driver neglected to sound any
bell, gong or whistle, and that, in approaching the inter-
section of these streets, he ran upon the plaintiff, injuring
him.  The instruction continues:

"I instruct you that if you find from the evidence in this
case that the servant of the defendant did approach said
crossing and did run over and upon and injure said Moy Sue
and did fail and neglect to sound any gong, bell or whistle,
so as to warn said Moy Sue of the approach of said automo-
bile, the defendant was guilty of such negligence in that be-
half as to render him responsible to the plaintiff for damages
unless you should find that said Moy Sue was injured by
reason of his own contributory negligence, as hereinafter de-
fined."

It is conceded that a violation of the ordinance, in failing to give notice of approach by the driver of the automobile, would be negligence as a matter of law. It is contended, however, that this instruction is erroneous, in that it failed to tell the jury that, even if it found the appellant guilty of negligence, it must find that negligence the proximate cause of the injury, before the plaintiff could recover. It is true, the instruction did not so advise the jury in terms, but it did, in substance and effect, since it closed with the statement that if the jury found that the respondent was injured by reason of his own contributory negligence, he could not recover. We find no serious error in this instruction.

The next instruction criticized recites, in substance, that an ordinance of the city provides that it shall be unlawful to drive an automobile along Jackson street or Fourth avenue South at the intersection of these streets at a greater rate of speed than eight miles an hour, or to pass or cross any street intersection, including the intersection of these two streets, or around any corner, at a greater rate of speed than four miles an hour running down grade and eight miles an hour running up grade. The instruction continues:

"I instruct you that if you find from the evidence in this case that the said Moy Sue was injured as alleged by the defendant's automobile and that the same was being driven at a rate of speed in excess of 8 miles per hour or at a rate of 4 miles per hour, if you find that the grade was down grade, or 8 miles per hour if the grade was up grade, that the defendant would be guilty of negligence and Moy Sue would be entitled to recover for his said injuries, unless you find that said Moy Sue cannot recover by reason of his own negligence contributing to his said injury."

This is objected to on the same ground as the preceding instruction, namely, that the court failed to tell the jury that the violation of the speed ordinance must be found the proximate cause of the injury before the respondent could recover. For the same reason, the objection is not well founded. The closing words of the instruction clearly made want

of contributory negligence on the respondent's part a condition of the application of the prior part of the instruction. The jury could hardly have been misled by the failure to add in terms that the injury must be found to have resulted from appellant's negligence as the proximate cause.

The following instructions are also criticized:

"If you find from the evidence in this case that said Moy Sue was run down and injured by the defendant's automobile on or about October 7th, 1912, while crossing over Fourth avenue south at its intersection with Jackson street, and if you further find that said Moy Sue was so crossing said street, that his back was to the defendant's approaching automobile and that the person in charge of said automobile could, in the exercise of reasonable care, have seen and avoided running over and injuring said Moy Sue, and failed and neglected so to do, then I instruct you that your verdict in this case should be for the plaintiff for such sum as you may find from the evidence he is entitled to recover  .  .  .

"I instruct you that if you find from the evidence that the driver of the automobile at the time it collided with the plaintiff, and immediately prior thereto, was proceeding on the right hand side of the street, as required of the ordinances of the city of Seattle, and was not moving at a rate of speed greater than 8 miles per hour, and after he saw, or in the exercise of reasonable care should have seen, the plaintiff in a place of danger, used every means at hand to avoid striking and injuring the plaintiff, then your verdict must be for the defendant."

It is urged that, under the rule announced in *Mosso v. Stanton Co.,* 75 Wash. 220, 134 Pac. 941, these instructions incorrectly state the rule of last clear chance. It is true that the instructions are faulty in that they fail to mark the distinction between the application of that rule where the driver of the automobile actually saw the respondent in time to avoid the injury, and where the driver, by the exercise of reasonable care, might have seen and appreciated the respondent's danger in time to avoid the injury. In the first situation the respondent's negligence continuing to the time of the injury would be immaterial. In the second, the rule

of last clear chance would not apply unless the respondent's
negligence had spent itself or culminated in a situation from
which the exercise of reasonable care on his part thereafter
would not extricate him.   The appellant, however, is in no
position to complain of this defect.   The instruction offered
by the appellant, instead of this, reads as follows:

"I instruct you that if you find from the evidence that the
driver of defendant's automobile at the time and place of the
accident complained of herein, after he saw, or in the exer-
cise of reasonable care, should have seen the plaintiff in a
place of danger, used every means at hand to avoid striking
the plaintiff, then your verdict must be for the defendant."

It is obvious that this requested instruction was open to
the same criticism as the instructions actually given, and to
a much greater degree.   The first instruction given recites
facts which, if found, would show that reasonable observa-
tion on the driver's part might have advised him that the re-
spondent was unconscious of his danger, so that the driver
would have no right to expect that he would take any steps
to extricate himself.   At any rate, the appellant having
failed to request an instruction correctly stating the doctrine
of last clear chance, but having requested one fully as ob-
jectionable as that given, cannot avail himself of the error
here suggested.

The appellant also objects that the last instruction given
by the court, as above quoted, was erroneous in that it as-
sumed that the appellant had no right to drive on the left-
hand side of the street.   It is true that all of the street is
open for use to the entire public, but it is also true that a
driver who violates the law of the road or a city ordinance
must exercise a higher degree of care than otherwise, and if
injury results from his failure to observe the ordinance, that
failure will constitute negligence *per se*.

It is insisted that the court failed properly to instruct the
jury on the issue of contributory negligence.   The court
gave the following instruction:

"I instruct you that the plaintiff, while walking on the public streets of the city of Seattle, at the time and place of the accident in question, was required to make reasonable use of his senses in order to avoid impending danger, and if he failed so to do, and was injured by reason of such failure, he is guilty of such negligence as will preclude a recovery by him for the injuries, if any, sustained by him. Such reasonable use of the senses means such use as an ordinarily prudent and careful person would have used under like circumstances and conditions, and so in the case before you, if you find that the plaintiff observed the automobile of the defendant before the collision, or by reasonable use of his senses could have observed the said automobile in time to avoid a collision, then he cannot recover damages from the defendant in this case, and your verdict must be for the defendant. . . . Mr. Kerr: That wouldn't be true if they were exceeding the speed limit. By the Court: That will be taken into consideration, ladies and gentlemen of the jury, with the other instructions, as to whether he was exceeding the speed limit. If he was violating the ordinance that I have given, then the law would conclusively presume that the defendant was guilty of negligence."

It is admitted that the instruction as given, but for the final remark of the court in response to the remark of respondent's counsel, correctly stated the law. In fact, the instruction to that point was given at the appellant's request. It is urged that the additional statement of the court told the jury that if the appellant's driver was exceeding the speed limit, the respondent was excused from the exercise of any care. While the language of the court was unfortunate, we hardly think that, in view of the other instructions it was calculated to mislead. It is clear that the court intended to advise the jury that the instruction as given should be taken into consideration with the other instructions touching the appellant's negligence in violating the speed limit. The court had already instructed the jury as to the reciprocal rights and duties of the respondent and the driver of the automobile. He had advised the jury that the respondent had the right to cross over the street at this intersection

and that the appellant had the right to operate its automobile in the streets of the city; that the respondent was required to use due care in using the street, and that the appellant's driver was required to so operate his machine as to avoid injury to pedestrians; that it was his duty to sound his horn and slacken his speed at the street crossing, and to keep his automobile under control and at a speed not exceeding eight miles an hour; that if he failed to observe these duties, and, by reason thereof, ran the respondent down, and that the respondent himself was free from contributory negligence as thereafter defined, the respondent could recover. Considered in connection with this instruction to which the court's remark evidently referred, it seems clear that the remark could not have misled the jury or, as counsel contends, cancelled the effect of the instruction defining contributory negligence.

Finally, it is contended that the verdict was so excessive as to show passion and prejudice on the part of the jury. After a careful reading of the testimony of the several physicians who have, from time to time, examined and treated the respondent, we cannot concur in this view. If, as the medical testimony tends to show, the respondent, by reason of his injuries, is now a confirmed epileptic, it is clear that the verdict is not excessive. There can be no question that his skull was fractured and that a piece of it was removed, and that, since that time, he has developed epilepsy. What the final result will be, none of the physicians could say. Upon such a record, we would not be warranted in saying that the court abused its discretion in refusing a new trial on the ground urged.

The judgment is affirmed.

CROW, C. J., GOSE, MAIN, and CHADWICK, JJ., concur.