[No. 24033. Department Two. December 21, 1932.]

ROY W. PETERSON, *Respondent*, v. TACOMA-ASHFORD TRANSIT COMPANY, *Appellant*.[1]

[1]Reported in 17 P. (2d) 35.

*Guy E. Kelly* and *Thomas MacMahon,* for appellant.
*G. C. Nolte* and *Wesley Lloyd,* for respondent.

MAIN, J.—This action was brought to recover damages for personal injuries. The defendant presented an answer which contained three affirmative defenses and a cross-complaint. The cause was tried to the court and a jury, and resulted in a verdict in favor of the plaintiff in the sum of $2,500. Motions for judgment notwithstanding the verdict and, in the alternative, for a new trial being made and overruled, judgment was entered, from which the defendant appeals.

The facts, which will present the question to be determined upon this appeal, may be stated as follows: The appellant, Tacoma-Ashford Transit Company, is a corporation engaged in the business of operating automobile stages over certain highways in Pacific county and Lewis county. The principal place of business of the corporation and its repair shop are in the city of Tacoma. One stage line of the appellant operates between the town of Elbe, in Pierce county, and Lewis, in Lewis county. The respondent was the driver of this stage, and it was his duty to keep the same greased and cleaned, but he was not an expert mechanic.

About ten days prior to November 17, 1930, the second leaf of the left front spring of the stage broke, and the respondent sent word of this fact to the repair shop in Tacoma, with the request that a new spring leaf be sent down. Two days before the date of the accident, the respondent was in Tacoma and called up the superintendent of the shop, informing him that the spring leaf had not been received and requesting that one be sent.

Sometime during the afternoon or evening of November 16, 1930, while the respondent was driving the

stage, he had difficulty with steering the same. It would turn to the right, but not to the left. He drove it into a garage in the town of Morton, through which his regular run passed, and the mechanic there tore down the steering gear to ascertain what the trouble was, and found that it was not defective. The broken ends of the spring leaf were protruding, and the mechanic wired these in place. He testified that he informed the respondent that it was the protruding ends of the broken spring leaf that were interfering with the mechanism of the steering gear and caused it to lock. This the respondent denied, and testified that he did not know that the broken spring leaf would interfere with the steering, and that, if he had known this fact, he would not have continued to operate the stage with the broken spring leaf.

On the morning following, November 17, 1930, while the respondent was driving the stage, after having left the town of Lewis that morning, the steering gear locked, the stage went off of the road, the respondent was seriously injured, and the stage substantially damaged. As indicated, the respondent brought the action to recover for the personal injuries that he sustained by reason of this accident. The appellant, by its cross-complaint, sought to recover the damages to the stage.

One of the affirmative defenses in the appellant's answer was that of assumption of risk. Upon the trial, the appellant called a number of witnesses who qualified as experts, and they testified that the broken spring leaf could not result in interfering with the steering gear of the stage.

■■ The appellant opens its argument with this statement: "The defendant contends that the plaintiff [respondent] assumed the risk incident to his employment under the proof in this case;" and the entire

argument of the appellant is devoted to this question. The question, stated otherwise, is whether the respondent, knowing that the spring leaf was broken, was chargeable, as a matter of law, with the danger that would result therefrom, in that the broken ends of the spring would interfere with the steering mechanism.

In many instances, where the employe knows of the condition, he will be charged with knowledge of the danger that may result therefrom. In 3 Labbatt's Master & Servant (2d ed.), § 1147, it is said:

"In considering whether the servant's action is barred on the ground of knowledge, the material question is not whether he was aware of the conditions which produced the danger, but whether he understood the danger itself. But in a large number of instances the conclusion that knowledge of the conditions cannot be imputed without also imputing knowledge of the attendant risks is so clearly unavoidable that, for practical purposes, the investigation is concerned only with the question whether the servant possessed the former kind of knowledge."

Upon this question, §§ 1190 and 1191 of the same author are informative. There are other instances where the employe, knowing of the condition, will not be held to be charged with the resultant danger. In *Shoemaker v. Bryant Lumber & Shingle Mill Co.*, 27 Wash. 637, 68 Pac. 380, it is said:

"Mere knowledge of the defect will not always be sufficient to charge the servant with an assumption of the risk. Such knowledge must convey the danger that may or is likely to result from the defect. [Citing authorities.]"

The cases of *Lahti v. Rothschild*, 60 Wash. 438, 111 Pac. 451, and *Neal v. Phoenix Lumber Co.*, 64 Wash. 523, 117 Pac. 267, state the rule in similar language.

Where the employe knows of the condition, and the

danger resulting therefrom is the normal or ordinary danger which is an incident of the condition, the employe will be held to have assumed the risk of such danger. On the other hand, if the employe knows of the condition, and the danger resulting therefrom is the abnormal or extraordinary danger, he will not be held to have assumed the risk, unless he had knowledge of such danger, or, in the exercise of ordinary prudence, should have appreciated it.

In *McPherson v. Twin Harbor Stevedoring & Tug Co.*, 139 Wash. 61, 245 Pac. 747, there was quoted with approval an excerpt from the case of *Gila Valley, G. & N. R. Co. v. Hall*, 232 U. S. 94, as follows:

"An employé assumes the risk of dangers normally incident to the occupation in which he voluntarily engages, so far as these are not attributable to the employer's negligence. But the employé has a right to assume that his employer has exercised proper care with respect to providing a safe place of work, and suitable and safe appliances for the work, and is not to be treated as assuming the risk arising from a defect that is attributable to the employer's negligence, until the employé becomes aware of such defect, or unless it is so plainly observable that he may be presumed to have known of it. Moreover, in order to charge an employé with the assumption of a risk attributable to a defect due to the employer's negligence, it must appear not only that he knew (or is presumed to have known) of the defect, but that he knew it endangered his safety; or else such danger must have been so obvious that an ordinarily prudent person under the circumstances would have appreciated it."

The cases of *Foley v. Crawford*, 125 Kan. 252, 264 Pac. 59, and *Nofsinger v. Goldman*, 122 Cal. 609, 55 Pac. 425, and many others that might be cited, are to the same effect.

Before it could be held that the respondent assumed the risk, it would be necessary to find that, in the exercise of ordinary prudence, he should have known of the danger, and before this would become a question of law, the question must be one upon which reasonable minds may not differ. In *Pearson v. Federal Mining & Smelting Co.*, 42 Wash. 90, 84 Pac. 632, it is said:

"We have uniformly held that the question of assumed risk is for the jury where reasonable minds may differ upon it. [Citing authorities.]"

In this case, as already indicated, the mechanic that repaired the car at Morton testified that he informed the respondent that it was the broken spring that was interfering with the steering gear and causing it to lock. This the respondent denied, and testified that he did not know that it would have that effect. Whether the respondent knew of the resultant danger, therefore, is settled in his favor by the verdict of the jury. A number of expert witnesses having testified that the broken ends of the spring leaf could not interfere with the steering gear and cause it to lock, it cannot be held, as a matter of law, that the respondent, in the exercise of ordinary prudence, should have known something which the experts said could not happen.

In *Berry v. Dillon Mills*, 120 S. C. 333, 113 S. E. 348, it was said:

"But even if he knew that the defect existed, it does not follow that he understood and appreciated the danger. Certainly, it could not be held that the danger from fire ought to have been anticipated by him, when, according to defendant's witness, Lovell, the friction of the weight against the pulley could not have produced the fire."

600

The appellant calls special attention to the case of *Wilkinson v. Tacoma Taxicab & Baggage T. Co.*, 159 Wash. 374, 293 Pac. 455; but that case differs from this, in that, there, the plaintiff knew not only of the condition but of the danger, while, here, the respondent knew of the condition, but did not know of the danger; and, as we have seen, it cannot be held, as a matter of law, that, in the exercise of ordinary prudence, he should have appreciated the danger.

The judgment will be affirmed.

TOLMAN, C. J., BEALS, and STEINERT, JJ., concur.

