[No. 31849. Department Two. April 17, 1952.]

CLIFFORD A. HEINLEN, *Appellant,* v. MARTIN MILLER ORCHARDS, INC., *Respondent.*[1]

[1] Reported in 242 P. (2d) 1054.

*Jerome Williams* and *Patrick H. Murphy*, for appellant.
*Gordon H. Sweany, Carl P. Zapp, Mansfield & Watson,*
and *R. E. Mansfield*, for respondent.

OLSON, J.—At the conclusion of the plaintiff's case, in the trial of this cause before a jury, the court sustained the defendant's challenge to the sufficiency of the evidence and dismissed the action with prejudice. These rulings are assigned as error by the plaintiff in this appeal.

The facts, considered most favorably for the plaintiff, are as follows: Plaintiff was employed by defendant to work in its orchards, and, at the time of his injury, was in charge of the operation of the brush-shredding machine by which he was injured. He had operated it for about nine weeks (six weeks in 1948, and three to five weeks in 1950).

The machine may be described as follows: It is pulled by a tractor, and its function is to pick up pruned branches from the ground, shred them, and redeposit them on the soil. Several pickup or rake teeth, about one inch wide, two

inches in depth, and thirty inches long, project in front of the machine and serve to scrape the prunings from the ground. The butt end of each of these rake teeth is secured to a horizontal piece of channel iron, known as the rake bar, by two bolts—one near the front edge of the rake bar and one near the rear. Along both sides of each rake tooth, small metal bars, called guide bars, had been welded to the rake bar by the manufacturer.

The branches are picked up by the rake teeth, and forced along them by the forward motion of the machine, until they are met by a revolving drum containing teeth which protrude about two inches from the drum, and which pass on either side of the butt end of each rake tooth. These teeth on the drum carry the branches upward and against stationary teeth, thus shredding them. The drum is operated by a motor on the machine.

It is necessary, when moving the machine from one field to another, to raise the projecting ends of the rake teeth by moving a hand lever which operates the rake bar. This lever is located above and in front of the rake teeth.

The managing agent of the defendant had shown plaintiff how to operate the machine, including the rake-bar lever to raise the rake teeth. He operated this lever in plaintiff's presence, while the drum was revolving, and had told plaintiff to allow the drum to revolve, after the forward motion of the machine was stopped, to clear out branches so they would not be dropped on the road when the machine was moved to another orchard.

Intending to move the equipment to another orchard, and without waiting for the drum to stop, plaintiff stepped in front of the machine to operate the rake-bar lever to raise the rake teeth. While he was moving the lever, one of the rake teeth was thrown forward from the machine and struck him on his right leg, causing the injury of which he complains.

The guide bar, on one side of the rake tooth which struck plaintiff, had been missing since 1948. The absence of this bar permitted the rake tooth to pivot and be hit by one or

more of the teeth on the revolving drum, which expelled it forward against plaintiff's leg. The front bolt in the expelled rake tooth was sheared, the rear bolt having fallen out previously without its absence being noticed. It was not uncommon for these bolts to fall out or for the rake teeth to be dropped from the machine. Plaintiff knew this, as he had replaced them many times. He examined the machine every day, and was familiar with it, but did not know and had not been warned of any danger from a rake tooth being expelled from the front of the machine.

The sufficiency of these facts to justify recovery by the plaintiff was challenged by the defendant upon three grounds: (1) that it was not shown that defendant was negligent; (2) that the contributory negligence of plaintiff was established, and (3) that plaintiff assumed the risk of injury.

■ All are attacked by plaintiff (appellant), and we are obliged to consider each of these contentions because, although the ruling of the trial court may be based upon an erroneous ground, it will be sustained if it is correct upon any ground. *Rawlins v. Nelson,* 38 Wn. (2d) 570, 578, 231 P. (2d) 281 (1951), and cases cited.

■ Considering the question of the negligence of the defendant, we find counsel in agreement upon the proposition that defendant had a nondelegable duty to provide plaintiff with safe appliances, and to inspect and test the appliances at reasonable intervals, using reasonable care to keep them safe. *Myers v. Little Church by the Side of the Road,* 37 Wn. (2d) 897, 904, 227 P. (2d) 165 (1951).

■ Defendant's manager testified, as an adverse witness, that defendant made no systematic inspection of the machine, and that there was a failure either to discover or to remedy, if discovered, the absence of the guide bar next to the rake tooth, which had been missing since 1948. There was testimony that this defect permitted the rake tooth to pivot so that it could be struck by the teeth on the drum and expelled forward.

Upon these facts, a question for the determination of a jury is presented, because it cannot be said that reasonable minds could not differ on the issues of whether the defendant's conduct (1) satisfied the requirements of the rules defining its duty to plaintiff, its employee, and (2) whether it was a proximate cause of the injury to plaintiff.

■ ■ Regarding the contributory negligence of the plaintiff, the inquiry is whether or not he exercised that reasonable care for his own safety which a reasonable man would have used under the existing facts and circumstances, and, if not, was his conduct a legally contributing cause of his injury. See 2 Restatement, Torts, 763, 1227, §§ 289 (comments a and b), 463. The only objects he had ever seen expelled from the front of the machine were small sticks and stones. From this fact, and considering all the facts and circumstances shown in his case, we conclude that the question of his contributory negligence presents an issue for the jury.

■ The remaining issue for consideration is the one upon which the ruling of the trial court was based, that is, that plaintiff assumed the risk of injury. To charge plaintiff with having assumed the risk attributable to a defect due to defendant's negligence, it must not only appear that he knew (or that it was so obvious that he is presumed to have known) of the defect, but also that he knew it endangered his safety; or else such danger must have been so obvious that an ordinarily prudent person, under the circumstances, would have appreciated it. *Blanco v. Sun Ranches, Inc.*, 38 Wn. (2d) 894, 902, 234 P. (2d) 499 (1951), and cases cited. The application of the doctrine depends upon the facts and circumstances in each particular case. *Rawlins v. Nelson, supra.*

■ Plaintiff knew of the defect (the absence of the guide bar), but there is no evidence that he had knowledge of the risk of harm flowing from that defect. See *Peterson v. Tacoma-Ashford Transit Co.*, 170 Wash. 594, 597, 17 P. (2d) 35 (1932), and cases cited. Reasonable minds could well differ upon the proposition of whether or not

plaintiff, as a reasonably prudent man, under the circumstances, should have appreciated the particular danger to which he exposed himself and which injured him. Plaintiff's evidence presented a question for the jury on this phase of the case, as it did upon the others.

The judgment is reversed, with instructions to the trial court to grant a new trial.

SCHWELLENBACH, C. J., HILL, HAMLEY, and FINLEY, JJ., concur.