(No. 5596.   Decided July 29, 1905.)

E. L. CARLSON *et al., Respondents,* v. THE WHITE STAR STEAMSHIP COMPANY, *Appellant.*[1]

SHIPPING—OWNERSHIP OF VESSEL—EVIDENCE—NAME OF COMPANY—VARIANCE. In an action against a steamship company, a prima facie case of ownership of a vessel is shown by answers to interrogatories, and by certified copies of records from the United States custom office, showing that she was registered as owned by the company, and by an admission that she had ever since been operated by the company; and any variance therein by the omission of the word "The" in the corporate name of the company is immaterial.

SAME—NEGLIGENCE—COMMON UNDERTAKING—INJURY TO SERVANT OF INDEPENDENT CONTRACTOR—MASTER AND SERVANT—VICE PRINCIPAL. The owner of a ship whose crew is engaged with the servants of a lighterage company in unloading lumber, is engaged in a common undertaking, and owes the duty to exercise care in its part of the work; and it is liable to the servants of the lighterage company for negligently sending down a heavy stick of timber, by shoving it through a porthole by hand to be received in a narrow place by an insufficient number of men, where machinery and appliances were available for handling the same with safety.

SAME—CONCURRENT NEGLIGENCE OF INDEPENDENT CONTRACTOR. In such case, the negligence of the lighterage company in not employing a sufficient number of men does not release the ship owner from liability for its own negligence.

SAME—MASTER AND SERVANT—VICE PRINCIPAL. The third officer of a vessel in charge of unloading lumber is a vice principal, and his negligence in conducting the work must be imputed to the master.

SAME—CONTRIBUTORY NEGLIGENCE. Where servants of a lighterage company were working in a narrow place, receiving lumber from a vessel, and had no voice in the matter of how it was to be unloaded,

[1] Reported in 81 Pac. 838.

they were not guilty of contributory negligence in attempting to handle, as best they could, a big stick sent down without notice in an improper manner against their protest, and which was caught and thrown about in a violent manner that they could not have anticipated.

Appeal from a judgment of the superior court for King county, Griffin, J., entered December 13, 1904, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, in consolidated actions for personal injuries received by employees of a lighterage company in unloading lumber from a ship. Affirmed.

*Richard Saxe Jones,* for appellant.
*Morris, Southard & Shipley,* for respondents.

Root, J.—Two cases are consolidated for the purposes of this appeal. Respondents each brought suit against appellant for damages resulting from personal injuries sustained at the same time, while on a scow upon which appellant was discharging lumber from its steamship "Oregon," in the roadstead off Nome, Alaska. The case was tried in the superior court before the judge without a jury, and resulted in a judgment in favor of each respondent. From each of said judgments, appeal is taken.

The material facts are about as follows: A lighterage company was to receive the cargo of lumber from the "Oregon." Said lumber was being discharged upon a lighter or scow some two miles from the shore. Respondents were employed by the lighterage company and were working upon its said lighter. Appellant's officer in charge of the work of unloading, feeling that the same was not being done rapidly enough, placed two of the ship's crew upon said lighter to help receive the cargo. These men received lumber and piled it at one end of the lighter while respondents received and piled lumber at the other end. Each party so piled said lumber toward the middle of the lighter. At length there remained only a space of four to six feet unoccupied near the center of the

scow in which respondents were working. At this juncture, the men on the ship put out a heavy timber of green fir, ten by ten inches square and eighteen to twenty-two feet in length. It was so put out through the porthole, about seven feet above the deck of the lighter, being handled by eight men under the direction of the ship's third officer, in charge of said work. Respondents remonstrated against the timber being shoved down by the men, as it was too heavy for them to handle. But this remonstrance was unheeded. The timber was pushed upon the lighter and one end fell close to the ship's side. As the waves of the ocean raised and lowered the lighter, this end of the timber caught under the edge of one of the steel plates on the ship's side which caused the other end of the timber to be thrown high into the air and to fall upon the lighter—this being repeated several times—striking against and falling upon respondents, causing the injuries complained of herein. The ship was provided with steam winches, block and tackle, and all appliances sufficient to handle such timbers readily and with safety

Numerous errors are assigned, but appellant groups them in three propositions: (1) That there was no proof of ownership of the vessel, and no proof of negligence on its part; (2) that respondents were employed by an independent contractor and appellant owed them no duty; (3) that respondents were guilty of contributory negligence.

As to the ownership, respondents submitted to appellant several interrogatories, some of which, with the answers thereto, were as follows:

"Interrogatory No. 5.—During the month of August, 1903, the time the alleged cause of action set forth in plaintiff's complaint accrued, if at all, was not the steamship Oregon being operated under said register of Aug. 21, 1900, and was she not then documented in the United States Customs House at Port Townsend as being owned by the White Star Steamship Company? Answer. The steamship Oregon is being operated and has been operated ever since the 21st day of August, 1900, under a registry certificate received from the

United States Custom House at Port Townsend, and is documented as being owned by White Star Steamship Company and was so during the month of August, 1903.

"Interrogatory No. 7.—During the month of August, 1903, did not the White Star Steamship Company, by its officers and agents receive money for and issue transportation to passengers from Seattle to Nome and from Nome to Seattle? Answer. Yes."

There was introduced in evidence a certificate of the deputy collector of customs at Port Townsend, as follows:

"Certificate of ownership of vessel. United States Customs Service, Port of Port Townsend, Collector's office, May 5, 1904.

"I hereby certify that according to the records of this office the screw steamer called the "Oregon" (19485) of Seattle, tonnage 1642, was registered at this office, August 21, 1900, and the following were her owners, viz., The White Star Steamship Company a corporation organized under the laws of the State of Washington and there is no mortgage or lien on record against said vessel in this office.

"Given under my hand and seal of office this 5th day of May, 1904, 11 A. M. Chas. Miller, Dep. Collector."

Underneath the signature, in apparently the same handwriting, are the words: "Records don't show a change in the above described ownership." A certified copy of the affidavit of Sol. G. Simpson, president of White Star Steamship Company, filed for the purpose of having the "Oregon" registered, was also introduced. This affidavit recites that the "Oregon" was owned by White Star Steamship Company. Said Simpson verifies the answer herein as president of White Star Steamship Company.

This and other evidence we think establishes at least a prima facie case as to ownership in this appellant. If there be a variance as to the word "The" as found in the title of appellant's corporate name, we deem it insufficient to justify a reversal; and we do not think the prima facie case is overcome otherwise.

To the contention that respondents were employed by an

independent contractor and that appellant owed them no duty, it may be conceded that there is no relation of master and servant alleged as between appellant and respondents, and it is true that respondents were working for somebody else. But appellant's ship crew and respondents were engaged in a common undertaking. In such a case, each party owes the other the duty of exercising ordinary care and prudence. When there are two practicable methods of doing his part of such work, one dangerous and the other safe as to the other party, a person who deliberately chooses the dangerous method and thereby injures the other party is guilty of negligence and liable for the results thereof. At the time of this accident, respondents were standing in a narrow space between the two piles of lumber. An unusually large and heavy stick of timber was shoved out of the ship. Appellant's crew had control of the manner of putting out said stick of timber. Instead of using the machinery and appliances which were available and capable of handling said timber, safely, they pushed the same out by hand, and let it drop with one end so near the ship that the catastrophe above mentioned occurred. The crew were acting under the direction of the ship's third officer. He was a vice principal of appellant, and his negligence must be imputed to it.

It is urged that the lighterage company was negligent in not having a sufficient number of men upon the scow. Be that as it may, it does not relieve appellant from the consequences of its own negligence in the premises. To the argument that respondents were guilty of contributory negligence, we may say that we do not think the evidence establishes this. Respondents did not know that such a large timber was to be unloaded until they saw it coming. They had no voice in the manner of its being discharged. Their protest was unheeded. They were in a narrow place. They undertook to handle it as best they could. That it would be dropped with one end so near the ship as to be caught and thrown about in a violent manner, was a matter which they

would not be expecting. We cannot say that they acted differently than men of ordinary prudence would have done under the same circumstances.

Taking the evidence as a whole, we think it sufficiently appears that the negligence of appellant's agents constituted the proximate cause of respondents' injuries, and that it does not appear that negligence on their part contributed.

The judgment of the lower court is affirmed.

MOUNT, C. J., CROW, RUDKIN, FULLERTON, HADLEY, and DUNBAR, JJ., concur.