[No. 18591.  Department Two.  January 9, 1925.]

ARNT JACKSON, *Appellant,* v. MITSUI & COMPANY,
LIMITED, *Respondent,* GRIFFITHS & SPRAGUE
STEVEDORING COMPANY, *Appellant.*[1]

MASTER AND SERVANT (178)—INDEPENDENT CONTRACTOR—DEFECTIVE
MEANS OR APPLIANCES—LIABILITY OF SHIP FURNISHING TACKLE TO
STEVEDORE. The negligence of the owner of a ship, loading at a dock,
in furnishing the stevedoring company with unsafe tackle, is a
question for the jury, where it furnished a block so constructed
and fastened that it could not swing to the right or left, greatly
increasing the strain, until it broke, and furnished short booms
greatly increasing the strain, and it appears that it knew and saw
the manner in which it was rigged and the work done, and gave no
notice to an employee of the stevedoring company, and that other
blocks with a goose-neck properly rigged would swing and relieve
the strain upon the neck.

SAME (42, 145)—LIABILITY FOR NEGLIGENCE—TOOLS AND APPLIANCES
—SHIPPING—QUESTION FOR JURY. In such a case, the negligence of
the stevedoring company is also a question for the jury, where its
foreman was notified of the danger and did nothing to warn the
injured servant.

APPEAL (406)—REVIEW—DISCRETION—NEW TRIAL. The discretion
of the trial court in granting a new trial upon conflicting evidence
will not be disturbed on appeal.

MASTER AND SERVANT (94, 161)—ASSUMPTION OF RISKS—DANGER-
OUS PLACES—SHIPPING—QUESTION FOR JURY. Whether a stevedore,
injured by the breaking of a block in the ship's tackle due to excess
strain through the negligent manner in which it was rigged, assumed
the risk, in placing himself in a position of danger, is a question
for the jury, where it was not unusual to do his work in the bight
of the line, the block was sufficiently heavy to sustain any strain
if it had been properly attached, and its location was concealed by
lumber unless attention was specifically directed to it.

APPEAL (488)—DECISION—REMAND FOR FURTHER ACTION—FAILURE
TO EXERCISE DISCRETION ON MOTION FOR NEW TRIAL. Upon reversing
an order granting judgment n. o. v., the cause will be remanded with
directions to pass upon respondent's previous motion for a new trial.

Cross-appeals from a judgment of the superior court
for King county, Ronald, J., entered December 10,

[1]Reported in 232 Pac. 317.

1923, dismissing one defendant in an action for personal injuries sustained by a stevedore, notwithstanding the verdict of a jury rendered in favor of the plaintiff, and granting a new trial to the plaintiff, after a verdict in favor of the other defendant. Reversed on plaintiff's appeal; affirmed on defendant's appeal.

*Arthur E. Griffin,* for appellant, Jackson.

*Stephen V. Carey,* for appellant Griffiths & Sprague Stevedoring Company.

*Trefethen & Findley,* for respondent Mitsui & Company.

PEMBERTON, J.—The appellant Arnt Jackson commenced this action against appellant Griffiths & Sprague Stevedoring Company and respondent Mitsui & Co., Ltd., for damages for injuries received while loading a vessel of respondent. The jury returned a verdict in the amount of $25,000 against respondent, and in favor of the stevedoring company. The respondent filed a motion for a new trial and for judgment notwithstanding the verdict. The plaintiff filed a motion for a new trial as against the appellant stevedoring company. The trial court granted the motion of respondent for judgment notwithstanding the verdict, and denied its motion for a new trial and entered judgment of dismissal, from which judgment the appellant Arnt Jackson has appealed. The trial court also granted the motion of the appellant Arnt Jackson for a new trial against the appellant stevedoring company, from which order granting a new trial the stevedoring company has appealed.

The plaintiff alleges in his complaint:

"That, under a written contract between defendants Mitsui & Co., Ltd., negligently and knowingly

furnished for loading the vessel, and defendant Griffiths & Sprague Stevedoring Co. negligently and knowingly used an iron stanchion with a weak and defective sheave attached thereto in such a manner as to cause an unusual transverse and unnecessary strain on said sheave, and caused the tackle to be arranged while loading in such manner that plaintiff was obliged to and did stand in the bight of the steel cable so that when said tackle broke plaintiff was caught and injured by the breaking of the sheave and straightening of the cable; that the Mitsui & Co., Ltd., furnished and Griffiths & Sprague used in loading the vessel, loading booms which were too short making it difficult and dangerous to load the vessel and negligently loaded the vessel with the plaintiff operating winch No. 4 and a winchman at hatch No. 5 with lumber and timbers piled between so the winchman at No. 5 winch did not see and observe the position of the cargo while being loaded so that an unusual strain was put upon the loading lines causing the tackle block to break and the plaintiff to be injured.''

The three acts of negligence complained of are: First, defective blocks furnished; second, defective manner of rigging tackle; and, third, short booms.

At the time of the injury, the vessel was tied to a dock at Seattle. The dock was on the vessel's port or left-hand side. On the right, there was a scow from which the lumber was being loaded into hatch No. 4 of the vessel of respondent. The stevedoring crew consisted of twelve men. Four were working on the deck, six were working in the hold of the vessel, and two were working on the scow. The four on the deck consisted of appellant Jackson and one Wicks acting as winchmen, Nelson and Hancock as hatch tenders. Appellant Jackson was operating winch No. 4, immediately back of hatch No. 4, near the center of the vessel. Wicks was operating a winch about forty-five feet back of winch No. 4. The starboard boom was so placed

that it was immediately above the scow of lumber. The port boom was placed so that it was immediately above hatch No. 4 in which the lumber was to be placed. A steel cable, by the witnesses called a "fall," ran from winch No. 4 through a block fastened upon a stanchion immediately back of winch No. 4, and on through a block at the foot of the starboard boom up to a block in the end of the boom above the scow, and down to a hook for raising the lumber from the scow. Another cable was run from winch No. 5 to the block in the end of the port boom immediately above hatch No. 4, and extended out over the edge of the vessel and joined the hook on the other cable at the scow.

The load of lumber to be lifted was fastened to the hook on these two cables. The lumber was lifted by winch No. 4, in control of appellant Jackson, and then it was swung across over the hatch by the winch No. 5, in control of Wicks. In order to properly handle the lumber, it was necessary for these two winches to be worked together, one pulling against the other. Because of a deck-load of lumber being between Jackson and Wicks, they were unable to see each other in the operation of the work. The appellant Jackson, in the operation of his winch, stood immediately to the right, the levers for operating the winch being on that side. The block that broke was the one immediately behind him fastened to an iron stanchion. Upon the breaking of the block, this steel cable or fall straightened out and struck appellant with great force, resulting in the injuries complained of.

It is the contention of appellant Jackson that this steel block was so constructed or fastened to the iron stanchion that it could neither swing to the right nor to the left, and in lifting a load it would naturally bend the iron neck connecting the block with the

stanchion, and thereby weaken the same, and in this manner the respondent was negligent in furnishing defective machinery dangerous to the life and limb of the workingmen loading its vessel.

It is the contention of the respondent that the block in question was one of the most modern construction; that it was only three months old, having been purchased from a reliable manufacturer; that it had been examined many times and was found to be in sound condition on the morning just prior to the accident; that the block was capable of lifting ten tons, and upon this particular morning it was lifting but three tons; that respondent operates thirty-two ships and the blocks on each of them are similarly constructed; that it has never been known of such a block being broken; that, if the block was defective, the defect was latent and could not be discerned by ordinary inspection, and that the stevedoring company was an independent contractor and was solely responsible for any injuries to its employees in loading the vessel.

The respondent has furnished a brief of some two hundred and fifty pages, citing extended authority. A large portion of the authorities cited are to the effect that a company is not liable to an employee for injuries caused by latent defects that cannot be detected by an external inspection; and there being no contract relation existing between respondent and appellant Jackson, the stevedoring company being an independent contractor, the liability, if any, would be solely that of the stevedoring company. Under these authorities, if there were no facts in this case to support the theory of appellant Jackson that the block in question was improperly constructed for the purposes for which it would naturally be used, the action of the trial court

in granting the motion for judgment notwithstanding the verdict should be sustained.

In the case of *Hoof v. Pacific American Fisheries,* 279 Fed. 367, the circuit court of appeals said:

"In the Rheola (C. C.) 19 Fed. 926, Judge Wallace held a vessel liable for injuries sustained through defective appliances by a stevedore employed by another, who had contracted to unload the vessel, although there was no privity of contract between the shipowners and the libelant."

We have held that the rights, duties and obligations of the steamship company in a case brought in the state court are governed by the rules and principles of the admiralty law. *Heino v. Libby, McNeill & Libby,* 116 Wash. 148, 205 Pac. 854. Under these rules, this steamship company is liable if it is shown by the testimony that it was negligent in the construction or maintenance of the equipment furnished to the stevedoring company, even though there was no contract between the appellant Jackson and the steamboat company.

The testimony of Mr. Wicks with reference to this block is as follows:

"The block stood straight with the ship. The boom came sideways from the block, and the way it came, the block was inclined to pull to the starboard side of the ship. The heel of the block fastened solidly in the stanchion that came up from the deck of the ship, and there was nothing to enable the block to swing around in the direction of the boom. It could not move sideways."

One of the jurymen asked him the question:

"Q. Are there blocks that raise and lower—are there blocks that go side by side? A. Yes, sir, every block on this ship but that one worked that way. The block which broke was not so fixed that it could pull at the angle when there was stress upon the rope. When

there was stress upon this line, the line would have a cross pull on the block. It would pull it sideways. The effect of having it there locked solidly, as it was, without being able to turn at a forty-five degree angle and using it as they did that morning, was first to pull it this way when those loads were being pulled, and then when it was changed over to pull it the other way, causing a tension across the neck of the block in both instances. That is just the way to do if you want to break a piece of iron, to hold one end tightly and bend it the other way and then this way until it breaks.''

R. Nelson testified:

''The ship furnished the block that was used at that time. It had been installed the day before that way, that neck is carried there at all times. I was in that position at the time I commenced working with it that morning — attached in the same manner. The fall always had to go from the winch at No. 4 to the block which is back of No. 4. Q. This block you used just as it was placed there on the ship? You did not place it? A. No, sir. I stood right there in the bight myself and drove that winch. There was no danger in that—it (the block) could not drop down with that kind of a goose-neck. It cannot go down sideways or nothing. If you pull on it that way (indicating) it will break. Q. Was that a lateral strain? A. A side strain.''

Ralph S. Whaley, a mechanical engineer, testified:

''Referring to exhibit '3', the leading of the line through a sheave such as this held rigidly laterally so it cannot take its own course, the result of the line pull, is entirely wrong for the reason that it puts a bending on it at the fastening of the sheave. . . .  The amount of stress that was put on the extreme fibre of the steel on this side of the fastening would amount to ten or twelve times the amount of stress that would be given if the pull were straight. The strain was ten or twelve times as great due to the fact that it was not in the proper direction.''

The respondent, however, claims that it furnished the proper appliances, but it was the fault of the steve-

doring company that they were improperly used or, in other words, the rigging was improperly connected. It claims that the cable, instead of leading from the block that broke to the foot of the starboard boom, should have passed to the foot of the port boom and thereby avoid the necessity of the one operating the winch standing or sitting within the bight of the cable. This method would have had the same tendency to break the neck of the block. The testimony shows that the neck may have been weakened by being used in this manner on other occasions.

Respondent further contends that this cable may have been passed through the block in question, then to a block in the end of the boom on the back of the vessel, and then over to the block at the end of the boom on the starboard side. Connected in this manner, the tendency would have been to move the block up and down which would have been a proper pull and would not have weakened the neck of the block.

The officers of the respondent company furnished this vessel to the appellant stevedoring company for loading, were present at the time the work was being done, saw the manner in which this block was being used, and knew that it had been used prior thereto in practically the same manner with the pull on the reverse side. They furnished the short booms in question necessitating a more severe strain upon the cables and blocks in lifting a load. They permitted this work to be done in this manner without giving notice to the plaintiff occupying the place of danger. It was for the jury to determine whether or not the respondent, in furnishing this appliance, was in fact negligent, and whether this negligence proximately contributed to the injury of plaintiff. *Crimmins v. Booth*, 202 Mass. 17, 88 N. E. 449, 132 Am. St. 468; *Mitchell v. Barton &*

*Co.,* 126 Wash. 232, 217 Pac. 993; *Hayes v. Philadelphia & R. Coal & Iron Co.,* 150 Mass. 457, 23 N. E. 225; *Toomey v. Donovan,* 158 Mass. 232, 33 N. E. 396; *Moynihan v. King's Windsor Cement Dry Mortar Co.,* 168 Mass. 450, 47 N. E. 425; *Wheeler v. Wason Mfg. Co.,* 135 Mass. 294; *Silva v. Davis,* 191 Mass. 47, 77 N. E. 525; *Pearson v. Arlington Dock Co.,* 111 Wash. 14, 189 Pac. 559; *Carlson v. White Star Steamship Co.,* 39 Wash. 394, 81 Pac. 838; *Alaska Pacific Steamship Co. v. Sperry Flour Co.,* 107 Wash. 545, 182 Pac. 634, 185 Pac. 583; *Alaska Steamship. Co. v. Pacific Coast Gypsum Co.,* 71 Wash. 359, 128 Pac. 654.

It is the contention of appellant stevedoring company that the trial court erred in granting appellant a new trial against it. The testimony showed that the officers of the steamboat company advised Mr. Hamilton, the foreman of the stevedoring company, that the method of loading was dangerous. He testified as follows:

"I saw the load that went on. I was there at the time of the accident. I saw how the accident happened. The block was attached so it stood lengthwise with the ship. Q. Did you tell the stevedore foreman that it was not a proper way to arrange it? A. He told the stevedore hatch tender and the foreman, Mr. Hamilton."

The trial court, in granting the motion for a new trial, stated as follows:

"It must be conclusively manifest to all parties that the two findings in this verdict are so inconsistent that they cannot stand. I cannot sustain the findings favoring the stevedoring company on the ground of contributory negligence of plaintiff, for such assumption is contradicted by the finding against Mitsui & Company. If plaintiff was guilty of contributory negligence, how could the jury have found in his favor against Mitsui & Company.

"With my views of the case, I am compelled to grant plaintiff's motion for a new trial against the defendant stevedoring company."

It certainly was the duty of the appellant stevedoring company to furnish appellant Jackson a safe place in which to work, and not expose him to unusual and unnecessary dangers. There is sufficient evidence for the jury to find that appellant stevedoring company was negligent in this regard and especially this is true, since its foreman was notified of the danger and did nothing whatever to warn the appellant Jackson.

It is not for us to try and determine the reasons the trial court may have had for granting the motion for a new trial to the appellant Jackson against the stevedoring company. It is sufficient to say that we should not interfere or disturb the decision of the trial court in that regard when it is shown that he has exercised his discretion. *Dahl v. Wagner,* 87 Wash. 492, 151 Pac. 1079; *Hughes v. Dexter Horton Co.,* 26 Wash. 110, 66 Pac. 109.

It is contended that the appellant Jackson assumed the risk when he deliberately placed himself in a position of danger, that is, within the bight of the line, when in fact there would have been a safe way to have rigged the appliances so that it would not be necessary for one to sit within the bight. This rigging of the appliances was done under the direction of the foreman, and there is testimony to show that it is not an unusual place to sit and work; that the block was sufficiently heavy to have sustained any pull upon the cable used for that purpose if it had been properly attached to the stanchion so that it would swing to the right and to the left when in use, and it is further shown that the block itself was covered over to a great extent with lumber piled upon the deck, and that this

negligent manner of construction whereby it could not be swung from right to left was so concealed that an ordinary person would not learn of its dangerous construction unless his attention was specifically called to it. The question of whether or not the appellant Jackson under these facts assumed the risk was not a question of law but a question of fact for the jury.

It is the contention of the appellant Jackson that, in the event the court should find that the trial court erred in granting the motion for judgment notwithstanding the verdict, the respondent not having appealed from the order denying a new trial, the judgment of the trial court granting the motion for judgment notwithstanding the verdict and dismissing the action should be reversed and the judgment against the respondent be affirmed.

The trial court, in denying the motion for a new trial, stated as follows:

"Now, touching the motion of the defendant Mitsui & Company, I think the evidence fails to show any negligence whatever against this company sufficient to justify a verdict against it, and therefore, I am constrained to grant its motion for judgment n. o. v.; and, that the record may be straight, I will deny its motion for a new trial."

Granting the motion for judgment notwithstanding the verdict would avoid any necessity of passing, at that time, upon the motion for a new trial, and the court did so in order to complete the record without exercising any discretion as to whether or not a new trial should be granted. In fact, no new trial could be granted at that time after the motion for judgment notwithstanding the verdict had been granted. These two motions were, for all intents and purposes, in this form: First, respondent asks for judgment notwithstanding the verdict. If this be denied, respondent asks

for a new trial. The first being granted, respondent certainly would not insist upon the latter. Therefore, the judgment of the trial court is reversed, and the case remanded with directions to pass upon the motion of the respondent for a new trial. The judgment of the trial court granting a new trial to appellant Jackson against the stevedoring company is affirmed.

MITCHELL, FULLERTON, and BRIDGES, JJ., concur.