[No. 19507.    Department One.    March 29, 1926.]

EVA LENA BROUGHTON, *as Administratrix of the Estate of G. E. Broughton, Deceased, Appellant,* v. OREGON-WASHINGTON RAILROAD AND NAVIGATION COMPANY, *Respondent.*[1]

[1] MASTER AND SERVANT (98)—RISKS ASSUMED BY SERVANT—KNOWLEDGE OF DANGER. An employee in hazardous work on the construction of a bridge, over dangerous high water, assumes the risk from the employer's failure to provide life nets or safeguards for a rescue of a workman falling into the water.

[2] SAME (99)—ASSUMPTION OF RISK—OBVIOUS DANGERS. An experienced employee engaged in dismantling scaffolding used in the construction of a bridge, assumes the risk of danger in his removing the last plank, which it was apparent permitted a beam to drift in against his support, and which precipitated him into the river, when he had a rope at hand by which he could have held and steadied himself.

Appeal from a judgment of the superior court for Benton county, Truax, J., entered February 18, 1925,

[1]Reported in 244 Pac. 558.

in favor of the defendant, notwithstanding the verdict of a jury rendered for the plaintiff, in an action for wrongful death. Affirmed.

*Chas. W. Johnson* and *Phil G. Warnock,* for appellant.

*A. C. Spencer, McGregor & Fristoe,* and *Hamblen & Gilbert,* for respondent.

Askren, J.—In May, 1923, the Oregon-Washington Railroad and Navigation Company was engaged in the construction of a bridge across the Columbia river near Kennewick. In the progress of the work, it became necessary to lower a truss about two feet on one of the piers. To do this, it was necessary to raise the truss with a hydraulic jack, remove the blocking underneath, and then jack it down again. For this purpose a large hole was cut in the concrete, and in the preparation of this hole a series of holes were drilled therein. In drilling these holes, a scaffolding was erected which swung along the side of the pier six feet below the top of the pier and about eight feet above the river. The scaffolding was composed of two long timbers approximately 6 x 8 inches, called "needle beams." On top of these needle beams, were some six or seven short planks running crosswise, and which held the needle beams apart. On top of the short planks, were placed lengthwise a number of long planks of approximately the same length as the needle beams, on which the workmen stood. The scaffolding was suspended by large ropes, tied to the needle beams on either side, and fastened above to chords on the pier. It was found that the workmen using the compressed air hammer, while on the scaffolds, pushed the scaffolds away from the pier so they were all drifted against it. This was done by causing the ropes, upon which the scaffolds

were swung, to be placed farther in on the chords and at a slight angle, so that the weight of the scaffold would hold them tight against the pier. This was the customary method of handling the work along the different piers.

One Ted Broughton had been employed for some time by the defendant corporation in working on the bridge. On the 19th of May he was assisting in dismantling one of these scaffolds. The customary method of dismantling a scaffold was to first remove the long planks upon which the workmen stood, then one by one remove the short planks that were laid crosswise, and fastened to the needle beams. One Brace was at work at one end of the scaffold taking up the short planks, and Broughton at the other. The short planks extended over the side of the needle beams so that, when the scaffold was swung against the pier, the ends of the short planks rested against it. When one end plank was removed by Brace, the end of the needle beam on which he was standing swung in against the pier, because the removal of the short plank which held the needle beam away from the pier caused it to be released. When Broughton released the plank on the end where he was standing, that end of the needle beam also swung in against the pier. Broughton fell into the water, and, although an attempt was made to rescue him, he was drowned.

Suit was brought against the defendant corporation, alleging that the action came under the Federal Employers Liability Act, and setting up as grounds of negligence that the company negligently permitted the swinging of the scaffold by means of ropes and forcing it out from the pier upon which decedent was working; and further that decedent had no way of knowing the condition of the scaffold nor was he advised as to its

dangerous condition; that the company was negligent in not providing adequate safeguards for his life in case of precipitation into the river.

A trial was had before a jury, which resulted in a verdict for plaintiff. The trial court, however, granted judgment notwithstanding the verdict upon the grounds, first, that decedent was not employed in interstate commerce at the time of his death, and therefore the action could not be brought under the Federal Employers Liability Act. Second, that the decedent assumed the risks incident to his employment. This appeal followed.

The first ground upon which the court based its decision, that the case did not come under the Federal Employers Liability Act, has been disposed of in this court by the agreement of counsel for both sides that the case may be considered as coming under that act.

This leaves, then, the question as to whether or not the decedent came to his death through the dangers incident to his employment, and whether any negligence upon the part of respondent corporation has been shown.

[1] It cannot be gainsaid that the place where the decedent was working was a dangerous and hazardous one. The water in the river was quite high at the time, and the danger to the life of anyone falling therein was great; but this danger was something that was apparent to everyone working upon the construction of the bridge. It was known alike to the employer and the employee. The failure, then, of the employer to provide life nets or safeguards in case a workman was precipitated into the river, would not be negligence, for the safeguards that were used were open and apparent to the decedent, and he either considered them sufficient or chose to assume the risk. It was held in

*Bullivant v. Spokane,* 14 Wash. 577, 45 Pac. 42, that the failure to provide any safeguards to prevent a workman falling into the river was not negligence as long as the employee knew that none were provided.

**[2]** The evidence abundantly demonstrates that the scaffolding was correctly constructed. But it is argued that, because the ropes were moved in on the chord several inches, causing the scaffold to drift against the side of the pier, a danger was thus created that was unknown to decedent who was working upon the scaffold. There is quite a conflict in the testimony as to whether decedent had ever worked upon the construction or dismantling of any of these scaffolds before. Some of the witnesses claimed that he had been employed on the scaffolds, and others that he had not; but it is established by the evidence that he worked around the piers for quite a length of time, and that the scaffolding was in the same position ever since its erection. He was a young man, 21 years of age, weighing approximately 190 pounds, and had had employment most of the time for a number of years.

It seems apparent that any man, engaged in dismantling these scaffolds and realizing that the ends of the short planks were resting against the pier, would know that, if the short planks were removed, the needle beams held out from the pier only by these planks would immediately swing in. The testimony of appellant's witness, Brace, shows that he was working with decedent and that, the plank being first removed from his end of the needle beam, the beam swung in against the pier.

Counsel urge that it was the duty of the employer to notify the decedent that, in taking up the short plants, the needle beams would drift in; but this was

so apparent as to be obvious, and whatever danger there was connected with it would be just as apparent to the person who was removing the plank as to anyone else. This was a very simple instrumentality and required neither special knowledge nor skill in handling. *Brandon v. Globe Investment Co.,* 108 Wash. 360, 184 Pac. 325, 10 A. L. R. 286.

This is not a case where there was a latent defect in the construction of the scaffold, or where the timbers are improperly selected, or where in the ordinary use of it there is a concealed defect or danger. Anyone taking the slightest precaution for his own safety would realize that the removal of the last short plank left the needle beams free, save for the ropes which held them. The rope, which held the needle beams on which the decedent was working, was fastened near the end of the needle beam, and then was looped over the chord and down to the needle beam again, so that in the removal of the last plank the decedent had the rope near him to hold and steady himself by, if necessary.

It is contended by appellant that this case should be reversed under the authority of *Jackson v. Mitsui & Co.,* 132 Wash. 395, 232 Pac. 317. An examination of that case, however, will disclose the fact that negligence was predicated upon the defective construction of the ship's tackle, which was unknown to plaintiff and was known to the defendant. Nor is the case of *Cheatham v. Hogan,* 50 Wash. 465, 97 Pac. 499, 22 L. R. A. (N. S.) 951, analogous to this one. In that case the negligence was predicated on a defective scaffold, arising out of the materials used and the manner of its construction.

The evidence established that this was the usual and customary way of building and dismantling scaffolds, and we find nothing in the record to indicate

any negligence on the part of respondent corporation in connection therewith.

Judgment affirmed.

TOLMAN, C. J., HOLCOMB, FULLERTON, and MACKINTOSH, JJ., concur.