[No. 19604.   Department One.   April 16, 1926.]

CHARLES REYNOLDS *et al., Respondents,* v. INTERNATIONAL STEVEDORING COMPANY, *Appellant.*[1]

[1] MASTER AND SERVANT (36, 145)—DEFECTIVE MACHINERY — SUFFICIENCY OF EVIDENCE. In an action by a stevedore, loading a vessel, the master's negligence in furnishing the winches is sufficiently shown by evidence that the cylinders would fill with water making them incapable of accurate control, which was the cause of the accident, and that the condition was known to the winchman and the superintendent in charge of the work.

[2] SAME (63)—VICE-PRINCIPALS—DELEGATION OF DUTIES. The duty to supply proper winches for loading a ship is a nondelegable duty of the master, rendering the superintendent or "hatch-boss" in charge of the work a vice-principal; nor is there, in this state, any distinction between cases of common law cognizance and cases under the law maritime.

[3] SAME (36, 145)—DEFECTIVE MACHINERY—NEGLIGENCE OF MASTER. Where winches furnished by a stevedoring company were defective when furnished, the negligence is the independent negligence of the master, and not that of its hatch-boss or plaintiff's coservant superintending operations employing the winches after notice of the defect.

[4] SAME (36, 145). Evidence that cylinders of winches accumulated water in an unusual degree, and did not clear themselves while in use as they would do if working properly, sustains a finding that they were defective.

Appeal from a judgment of the superior court for King county, Griffiths, J., entered June 22, 1925, upon the verdict of a jury rendered in favor of the plaintiffs, for personal injuries sustained by a stevedore while loading a vessel. Affirmed.

*Stephen V. Carey, Roy E. Bigham,* and *Alfred J. Schweppe,* for appellant.

*G. F. Vanderveer* and *S. B. Bassett,* for respondents.

FULLERTON, J.—The respondent, Charles Reynolds, was injured while in the employ of the appellant, Inter-

[1]Reported in 245 Pac. 1.

national Stevedoring Company, and recovered in this action for the injuries suffered.

The appellant was engaged in the work of loading merchandise onto the steamship London Merchant, then moored alongside a wharf in the city of Seattle. The respondent was employed as a stevedore, his work being to store the merchandise in the hold of the vessel as it was brought on board. The merchandise was brought on board the vessel in sling-load lots by means of the vessel's tackle operated with steam winches. Such a load was brought on board the vessel and lowered part way through the hatchway on its off-shore side. The winchmen were directed to swing it to the in-shore side before lowering. In the performance of this act, the winches failed to hold the load, and it was swung over rapidly and lowered at the same time. The respondent was working in this part of the vessel, and was caught between the load and a temporary partition placed in the vessel. His injuries were severe and permanent.

[1] The charge of negligence is that the winches were defective. While the evidence is in conflict on the point, there was evidence on the part of the respondent to the effect that the cylinders of the winches would fill with water on remaining idle for a short time, rendering them incapable of accurate control by the winchmen, and that this was the cause of their failure to hold the particular load. There was evidence also tending to show that the winches had been working imperfectly for some time preceding the accident, a fact known to the winchmen, to the hatch-tender, and to the superintendent (hatch-boss), whom the appellant had placed in charge of the work, although not known to any of the immediate officers of the appellant.

The appellant first argues that there is no substan-

tial evidence that the winches were defective, or that the injury was the result of such defect, if any existed. But with these contentions we cannot agree. As we say, the evidence was in conflict, but as we read the record, there was substantial evidence tending to support the claims, and this is as far as we have a right to inquire. Where the questions of fact are for the jury, their verdict on conflicting evidence is conclusive in the appellate court.

[2] The work in which the respondent was engaged is concededly of maritime cognizance, and it is contended that, under the rules applicable to the law maritime, there can be no liability on the part of the employer in this instance, even conceding that there were defects in the winches. If we have correctly gathered the argument in support of the position, it is that knowledge of the defect was brought home only to the winchmen, the hatch-tender and the hatch-boss, not to the employer, and that these, under the rule as announced by the authoritative court, are fellow-servants of the respondent, and their negligence, or the negligence of either of them, cannot be imputed to the employer.

But we have not heretofore applied the rule here invoked, even in the instance of maritime torts. From the earliest history of the court, we have held that, in work requiring concert of action on the part of the several workmen engaged therein, and which cannot proceed without immediate and direct supervision, the duty of supervision devolves upon the employer, and, if he employs another to act for him in the matter, he is responsible for the negligent performance of that duty by the person so employed. It may be that we have not followed the prevailing rule in so holding—indeed, we seem to be classed by Mr. Labatt as

standing alone with respect thereto (Labatt, Master & Servant, § 1537 [2d ed.])—but a rule so long established is not to be lightly overturned, and no reason now exists for so doing that was not in existence when the rule was first announced. Our cases on the question, we need not here cite. They will be found collected by Mr. Remington in his Washington Digest, under the head of Master and Servant, § 63. Nor have we made a distinction in the application of the rule between cases of purely common law cognizance, and cases cognizant under the law maritime, but have, on the contrary, applied the rule alike in both instances. Some of the cases in which we have applied the rule in maritime torts are the following: *Sroufe v. Moran Bros. Co.,* 28 Wash. 381, 68 Pac. 896, 92 Am. St. 847, 58 L. R. A. 313; *Westerlund v. Rothschild,* 53 Wash. 626, 102 Pac. 765; *Anderson v. Globe Nav. Co.,* 57 Wash. 502, 107 Pac. 376; *Norman v. Shipowners Stevedore Co.,* 59 Wash. 244, 109 Pac. 1012; *Jacobsen v. Rothschild,* 62 Wash. 127, 113 Pac. 261; *Jackson v. Mitsui & Co.,* 132 Wash. 395, 232 Pac. 317; *Haverty v. International Stevedoring Co.,* 134 Wash. 235, 235 Pac. 360, 238 Pac. 581.

It can be urged that the earlier of these cases are not controlling, because in them the precise question here involved was not urged or discussed, either by counsel or by the court. But the fact that the question was not raised is entitled to consideration in determining whether it has merit. Certainly, it would be a reflection on the many able counsel severally representing the different litigants to say that they overlooked a matter vital to their client's interests. In *Haverty v. International Stevedoring Co., supra,* however, the question was squarely before us, and we there determined that the rule was applicable to maritime torts.

[3]  In our opinion, however, the question just noticed is not vital to a recovery in the present case.  It is a rule applicable in maritime employments, as well as in employments not maritime, that an employer must furnish his employees with reasonably safe appliances with which to work.  He is not bound, of course, to insure the safety of the appliances which he furnishes for their use, nor is he obligated to furnish the best, safest or newest of such appliances for the purpose of securing the safety of the employees, who are required to use them, or who are otherwise liable to injury because of their defects.  But he is required to use reasonable care and prudence in this regard, and, if he furnishes an appliance which is so far defective as not to perform its functions when used with ordinary skill and care, and in the manner it is furnished to be used, he is liable for any injury caused to his employee because thereof.  In this instance, the winches were furnished by the employer.  The defects in them were defects which existed at the time they were furnished.  The fault, therefore, was the independent fault of the master, and it is liable for the injury resulting therefrom regardless of the relation that the several workmen bore to each other.  It will not do to say that the defect was latent, and thus not discoverable by ordinary inspection.  They were furnished for use and it was the obligation of the employer to know that they would operate with reasonable safety when put to the use for which they were furnished.

[4]  It is argued that the evidence shows that the accumulation of water in the cylinders of the winches was not unusual, that it occurs in all steam-driven engines, and is a matter to be remedied by the operator of the machine.  There was, indeed, evidence to this effect, but the evidence on the part of the respondent

was to the effect that water accumulated in the cylinders of the winches in an unusual degree, and it was the testimony of the appellant's own expert that winches, when working properly, cleared themselves of water while in use, and that, if these did not, it was proof that there was something wrong with them. The question whether there was or was not an undue accumulation of water in the cylinders, was, therefore, for the determination of the jury.

The other assignments require no special consideration. They present nothing not involved in the principal questions hereinbefore noticed, and our conclusions upon these questions determine them to be without error.

The judgment is affirmed.

TOLMAN, C. J., MAIN, MITCHELL, and HOLCOMB, JJ., concur.