[No. 19718.    Department Two.    April 23, 1926.]

M. J. McPHERSON, *Respondent,* v. TWIN HARBOR STEVEDORING & TUG COMPANY, *Appellant.*[1]

[1] MASTER AND SERVANT (167)—ACTIONS—INSTRUCTIONS—DUTIES OF MASTER—SAFE PLACE TO WORK. The rule in admiralty as to a safe place to work and assumption of risk being the same as at common law, error cannot be assigned upon failing to submit such issues upon a theory defined by the admiralty law, where proper instructions were given.

[2] SAME (74)—FELLOW SERVANTS — SIGNALS OR ORDERS — HATCH-TENDER AND STEVEDORE. A hatch-tender whose duty it was to give warning to other employees is a vice principal and not a fellow servant of the winch driver who should have been warned.

[3] SAME (89)—ASSUMPTION OF RISK BY SERVANT INJURED—RELIANCE ON CARE OF MASTER. A winch driver, in making the first operation for the loading of a heavy timber, has the right to assume that the master has adopted the proper and usual methods, and does not assume the risk from the fact that the lines were not properly attached to safely hold the timber.

[4] SAME (163)—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY—USE OF TOOLS OR APPLIANCES. The contributory negligence of a winch driver in not heeding a warning to get out of the way of a timber is a question for the jury where he testified that he did not hear the call.

[5] APPEAL (428)—HARMLESS ERROR—ON ISSUES FOUND IN FAVOR OF APPELLANT. Prejudicial error cannot be assigned upon refusing

[1]Reported in 245 Pac. 747.

a request for an instruction as to contributory negligence under the admiralty rule, where the request was not timely and the jury found, under proper instructions, that the plaintiff was not guilty of contributory negligence.

Appeal from a judgment of the superior court for Grays Harbor county, Campbell, J., entered May 18, 1925, upon the verdict of a jury rendered in favor of the plaintiff, for personal injuries sustained by a stevedore while loading a ship. Affirmed.

*W. H. Abel* and *W. A. Ackerman,* for appellant.

*James R. Gates,* for respondent.

MAIN, J.—This action was brought to recover damages for personal injuries. The cause was tried to the court and a jury and resulted in a verdict in the sum of $11,600. The defendant interposed a motion for judgment notwithstanding the verdict and also for a new trial, both of which were overruled. Judgment was entered upon the verdict and the defendant appeals.

The accident happened on the morning of April 15, 1924. For ten or twelve days prior to this, the appellant had been engaged in loading a vessel, which was alongside the dock of the Grays Harbor Lumber Company in the city of Hoquiam in this state. During this time, there had been four crews at work on the vessel, consisting of five or six members each. The respondent was a winchman and had worked at winch number 4, which was forward of winch number 5. The vessel was being loaded with green timbers from eighteen to twenty-four inches square and from thirty to forty feet in length. On the evening of the 14th the load had been completed, with the exception of a small portion aft of the boat and opposite winch number 5. The load being almost completed, the crews were discharged with the exception of that which worked at winch number 4.

On the following morning, or the 15th, the completion of the loading of the vessel was resumed. A large timber, approximately twenty-four inches square and thirty-six feet long, weighing something like a ton and a half, was lifted from the dock and placed on the offshore side of winch number 4. After this was done, the respondent was directed to go aft and take charge of winch number 5. The cable from winch number 5 was attached to the timber, and this passed under the mast stays. The effect was, as the timber was pulled aft, instead of its proceeding straight down the off-shore side of the vessel, it was caused to swing toward the center. The respondent's back, as he worked at the winch, was in the direction of the approaching timber. After the timber had been pulled some distance, it slipped or slid from the pile upon which it was and came upon the respondent, crushing one leg against the drumhead of the winch in such manner that the leg had to be subsequently amputated. It is claimed that the appellant failed to furnish the respondent a reasonably safe place in which to work and that, in moving the timber, a cable from winch number 4 should have been attached to it, to operate as a safety device or brake to prevent the timber from sliding and coming upon the respondent.

[1] The appellant claims that the cause should have been submitted to the jury upon the theory of liability as defined by the admiralty law. The respondent claims that it was so submitted except in one particular, which was an error which the appellant is not entitled to take advantage of. As we view the instructions of the trial court, they define the employer's duty according to the rules of liability of the maritime law, except in the one particular which will be herein later referred to.

The fact is that the rule of liability in admiralty and common law is the same with reference to a safe place to work and the assumption of risks. *Atlantic Transport Co. v. Imbrovek*, 234 U. S. 52; *Port of New York Stevedoring Corp. v. Castagna*, 280 Fed. 618. The court in its instructions properly defined what was meant by a safe place to work and also assumption of risk. There was no error in this regard.

[2] It is, however, contended that the hatch-tender who was in charge of the work at the time the respondent was injured, and whose duties were to give signals to start the winch and to stop, and to see that the timbers were properly handled, was a fellow servant under the admiralty law with the operator of the winch. In *Haverty v. International Stevedoring Co.*, 134 Wash. 235, 235 Pac. 360, 238 Pac. 581, it is held that a stevedore, in the hold of a ship stowing away cargo, was not a fellow servant with the hatch-tender whose duty it was to give warning to those below, since the latter was a vice principal. It was there said, after reviewing and quoting copiously from the authorities, that:

"The fellow servant rule appears to have been adopted by the admiralty courts from the common law, and we see no reason why the exceptions and modifications of that rule should not be held to have been adopted with the rule itself. True, we have been cited to no case where the admiralty courts have avowedly adopted the vice principal modification, but they seem to have applied it in *Alaska Pacific S. S. Co. v. Egan*, 202 Fed. 867; *Pacific American Fisheries v. Hoof*, 291 Fed. 306; *The Kinghorn*, 297 Fed. 621; and perhaps other cases; and it has often been recognized by the Federal courts in railroad cases, and no case has been brought to our attention in which the admiralty courts have refused to recognize it. It is not like a local statute or local rule destroying the uniformity of the maritime law, but, speaking generally, it is universally recognized and nation-wide in its applicability, and

therefore its recognition has no tendency to disturb the rule as to uniformity.''

See, also, *Reynolds v. International Stevedoring Co.*, 138 Wash. 690, 245 Pac. 1.

The court did not err in refusing to take the case from the jury on the ground that the respondent and the hatch-tender were fellow servants.

[3] Neither did the court err in refusing to take the case from the jury on the ground that the respondent had assumed the risk. While the evidence is in conflict, the jury had a right to find that, on the morning of the accident, this was the first timber that had been moved with the respondent at winch number 5. It cannot be said that he knew, or must be presumed to have known, that the timber was being moved in a way which the evidence shows was not the usual and customary manner. In *Gila Valley, G. & N. R. Co. v. Hall*, 232 U. S. 94, it was said:

''An employee assumes the risk of dangers normally incident to the occupation in which he voluntarily engages, so far as these are not attributable to the employer's negligence. But the employe has a right to assume that his employer has exercised proper care with respect to providing a safe place of work, and suitable and safe appliances for the work, and is not to be treated as assuming the risk arising from a defect that is attributable to the employer's negligence, until the employe becomes aware of such defect, or unless it is so plainly observable that he may be presumed to have known of it. Moreover, in order to charge an employe with the assumption of a risk attributable to a defect due to the employer's negligence, it must appear not only that he knew (or is presumed to have known) of the defect, but that he knew it endangered his safety; or else such danger must have been so obvious that an ordinarily prudent person under the circumstances would have appreciated it.''

3—139 WASH.

[4] It is claimed that the court should have taken the case from the jury, on the ground that the respondent was guilty of contributory negligence as a matter of law. The hatch-tender testified that, when he saw the log slip and as it was approaching the respondent, he called him to get out of the way, or words to that effect, and that there was ample time for him to do so. The respondent testified that he did not hear the call, and that he did not know that the log was approaching until it struck him. The question was one for the jury.

[5] The trial court instructed the jury, if they found the respondent was guilty of contributory negligence, that there could be no recovery. This is the common law rule, but the admiralty rule is that contributory negligence does not bar a recovery, but only affects the amount of the recovery. The instruction given was requested by the respondent. The appellant did not present, prior to the time the instructions were read to the jury, a request upon this subject. At the conclusion of the reading of the instructions, one of the counsel for the appellant called the court's attention to the fact that no instruction had been given upon the question of comparative negligence, and requested that such an instruction should be given, recognizing at the time that the instruction, if given, would not be in favor of the appellant. The court stated that the reason an instruction of the kind suggested had not been given was that there had been no request from either side, and gave permission to present such a request at a quarter to one p. m. The court then adjourned and reconvened at one p. m. The record shows that the instructions prepared on comparative negligence were presented to the court, and refused for the reason that they were not timely. While the instruction given was not correct under the admiralty rule,

yet we think it cannot be said, under the particular facts and circumstances of this case, to be reversible error. Under the instruction given, if the jury had found contributory negligence, their verdict would have been in favor of the appellant and there would have been no necessity then to inquire into the matter of comparative negligence.

There are a number of other questions presented in the briefs, most of which relate either to the instructions given or requests refused. Without pursuing these in detail, it may be said that they have been considered, and we do not find in any of them substantial merit. The jury, except in the one particular mentioned, was fully and accurately instructed upon all the necessary phases of the case, and this was sufficient.

The judgment will be affirmed.

TOLMAN, C. J., PARKER, MACKINTOSH, and MITCHELL, JJ., concur.