[No. 23081.  *En Banc.*  December 11, 1931.]

ANDREW NELSON, *Appellant*, v. BOOTH FISHERIES
COMPANY, *Respondent*.[1]

[1]Reported in 6 P. (2d) 388.

*George Olson* and *George F. Hannan,* for appellant.

*Hayden, Merritt, Summers & Bucey,* for respondent.

BEELER, J.—The plaintiff brought this action to recover damages for personal injuries sustained by him in falling from a dock owned and operated by the defendant at Kasaan, Alaska. The cause was tried to the court and a jury, resulting in a verdict in favor of the plaintiff. Thereafter, the defendant interposed a motion for a new trial, and a motion for judgment non obstante veredicto. No ruling was made on the motion for a new trial, but the trial court granted the motion for judgment n. o. v., and entered judgment dismissing the plaintiff's action, from which he has appealed.

The principal questions presented by this appeal are: First, was the respondent guilty of actionable negligence; and second, if so, is the appellant debarred from recovery by reason of contributory negligence? A determination of these questions necessitates a review of the facts.

The respondent owns and operates a fish cannery near Kasaan, Alaska, and owns and uses in connection therewith a warehouse, a fish house, a blacksmith shop, a carpenter shop, a mess house, a bunk house and various cottages. These several buildings are scattered along the shore covering an area of approximately 25 acres. The cannery extends north and south, along the shore, is from 350 to 400 feet in length, and varies in width from 80 to 125 feet. There are five doors leading from the inshore or east side of the cannery onto a sidewalk. The warehouse, built on piers, connects with the north end of the cannery, and extends westward out over the water a distance of approximately two hundred feet. A walkway some ten or twelve feet in width, built on piers, connects with the south end

of the cannery, and extends westward over the water for a distance of about 125 feet to the fish house.

The respondent owned and used in its fishing industry, a small boat or tender called the "Little Glory," on which the appellant was employed as a marine engineer. The jury were warranted in finding that, at about ten o'clock p. m. on July 15, 1929, the "Little Glory" was docked at the respondent's fish house; and soon thereafter the appellant, on a personal errand, left the boat to visit the town of Kasaan, which is situated about a mile distant from the cannery. In order to reach the shore, the appellant walked along the walkway extending from the fish house to the cannery, thence through the cannery, which was then open and lighted, thence onto the sidewalk parallelling the east side of the cannery, thence to the nearby village.

On his return from Kasaan at about midnight, the lights in the cannery were out and the five cannery doors on the east or inshore side were closed. It appears that the appellant tried to enter the cannery through the door farthest to the north, on the east side of the cannery, but apparently concluded that it was impossible to open the door, although the evidence disclosed that the door was in fact unlocked. The appellant did not attempt to enter the cannery through any one of the other four doors on the east side of the cannery, but proceeded to the northeast corner of the cannery and then walked westward on the dock to the end of the warehouse, thence south across the dock the width of the warehouse, a distance of about ninety-six feet, thence eastward along the warehouse a distance of approximately one hundred twenty-five feet, thence south along the west side of the cannery for a distance of about seventy-five feet, thence east along the south

side of the cannery a distance of approximately sixty feet.

Up to this point, the dock is from ten to twelve feet or more in width, but here a shed projects out onto a portion of the dock and the dock space narrows down to about five or seven feet. This shed had an overhanging roof without eaves troughs, from which water dripped onto the dock below when it rained. While passing along this narrowed dock or way, the appellant slipped off of it and fell onto the rocks below, a distance of about fourteen feet, and sustained the injuries complained of.

The recitals in the judgment disclose the following reasons why judgment was entered in favor of the respondent notwithstanding the verdict of the jury: (a) That plaintiff's injuries resulted from and were caused by his own contributory negligence. (b) That the plaintiff's injuries resulted from conditions and dangers the risk of which was assumed by the plaintiff. (c) That, despite the plaintiff's knowledge of the conditions and dangers resulting in his injuries, he voluntarily subjected himself thereto.

The doctrine of assumed risk has no application to the facts in this case. This doctrine is limited in its application to those cases where the relation of master and servant or some similar relation exists. In this case, the appellant, while using the respondent's dock in going from and returning to the boat, was an invitee. The obligation of a dock owner to an invitee has been settled in this state in a number of decisions. The gist of these decisions is that the owner or operator of a dock or wharf is under a positive duty to maintain it in a reasonably safe condition for use. *Gregg v. King County*, 80 Wash. 196, 141 Pac. 340, Ann. Cas. 1916C 135; *Alaska Pacific Steamship Co. v.*

*Sperry Flour Co.,* 107 Wash. 545, 182 Pac. 634, 185 Pac. 583.

The specific charges of negligence were that the respondent carelessly permitted the accumulation of slime, moss, seaweeds, fish oil, fish scales and other slippery substances at this place on the dock or walk, and carelessly and negligently failed to have a guard log or rail along the edge of the dock or walk at this point.

There was competent evidence introduced which tended to establish, and the jury must have found, that the respondent had failed to keep its dock in a reasonably safe condition for use, and that the appellant's injuries were proximately due to that neglect. At the place where the appellant fell from the dock there was no guard log or rail. This is not denied. As to the accumulation of slippery substances on the board walk or dock alongside the shed, there is a sharp conflict in the evidence. The verdict of the jury on this point is conclusive.

A recent decision of the United States circuit court of appeals for the second district, *Bailey v. Texas Co.,* 47 Fed. (2d) 153, contains many features similar to the present case, and the court held that both the question of the negligence of the dock owner and the contributory negligence of the plaintiff were for the jury. It was there said:

"Coming to the merits, we think that the plaintiff was more than a licensee; he was an 'invited person.' The ship came alongside the wharf on the defendant's business; she was to lade or discharge the defendant's oil. The crew were as much 'invited' as the ship herself, and they would not remain on board all the time she lay there. On the contrary, their business or leisure might take them ashore, and they had no way of reaching the street, except over the wharf. *Harvey v. Old Dominion S. S. Co.,* 299 F. 549 (C. C. A. 2); *Quinn v.*

*Staten Island R. Transit Co.,* 224 N. Y. 493, 121 N. E. 340; . . . Had there been a single path, well indicated, by which they could come and go, probably the defendant's duty would have been limited to making that safe (*Pallocco v. Lehigh Valley R. Co.,* 236 N. Y. 110, 140 N. E. 212), but this was not so. While the defendant was not bound to anticipate that seamen would wander at random about the wharf, it was charged with anticipating that they would choose the most convenient route.

"They must go down the ladder, and when they found themselves on the ground a straight way led to the gate. Normally, that was what they would take, and the measure of the defendant's care was to make it reasonably safe for active, alert men. However, on the night in question the flat car was left directly in front of the ladder in such a position that on the defendant's own measurements the distance was about two feet from its foot to the edge of the car platform, four and a half feet above the ground. A seaman might quite naturally prefer a step from the fifth rung to the platform to making his way between the ladder and the car. The length of his stride depended on where the ladder's foot was, and what was its incline. The plaintiff says the foot was nearer the crane rail than the stringpiece; if so, the fifth rung of a ladder twenty feet long was probably no more than three feet from the car platform, and offered an easy step by which to gain the car. It appears to us that a jury might say that this was a path which anyone must anticipate a seaman might choose rather than to go to the foot of the ladder and pass between it and the car.

"To allow a loose piece of iron piping to lie on the car opposite the ladder was to interpose an obstacle, which again reasonable men might think unsafe. The wharf was lighted, it is true, but the plaintiff says that the lamps gave little light upon the car, and in any event they would not show that the pipe was free to move. We might ourselves have concluded that the plaintiff was in liquor, as the defendant tried to show, and that he tripped for that reason, but that was plainly a question for the jury. It seems to us on the

one hand that they might have found him not guilty of contributory negligence, and on the other that the defendant should either have moved the car beyond the ladder, have had the ladder itself moved, or have taken the pipe out of the path.''

So here, the respondent had not set apart or indicated a definite path or way for the use of its employees. Respondent's foreman admitted that he had never directed the employees not to use the dock either while going ashore or returning to the boat. The employees were free to select their own course, unaided and uncontrolled by any rules promulgated by the respondent, or by any orders or directions of the respondent's superintendent. Furthermore, the overhanging shed, at the point where the appellant fell from the dock, is within a few feet, possibly not to exceed ten or twelve feet, from the guarded walkway or pathway extending north and south along the west side of the cannery. The appellant intended to reach this point and thence walk south alongside the west side of the cannery to the walkway which extends westward and connects with the fish house. But on stepping upon what he terms the slippery portion of the dock, he lost his balance and fell onto the rocks below.

In support of the claim of contributory negligence, the respondent in its brief suggests that, in order to reach his boat, the appellant had three routes open to him; one through the unlighted cannery which contained much machinery and other implements; one along the shore line beneath the wharf; and the other over the dock extending around the warehouse and alongside the cannery; and that, because he voluntarily adopted the latter, in the dark, he assumed the risk of injury, or at least, was guilty of contributory negligence as a matter of law.

With this contention, we cannot agree. The appel-

lant, having the right to use the wharf as an invitee, could choose either the way through the closed and unlighted cannery or the path along the edge of the wharf, without being guilty of negligence in choosing what he considered the most available route. Respondent's superintendent, Mr. Taylor, admits that the appellant had the right to sleep on the cannery tender, and "that it was optional with the appellant which route he took." Whether the path the appellant took in going to his boat was reasonably safe for use, was, under the evidence, preeminently a jury question.

"Generally the question of contributory negligence is for the jury to determine from all of the facts and circumstances of the particular case, and it is only in rare cases that the court is justified in withdrawing it from the jury." *Jordan v. Seattle,* 26 Wash. 61, 66 Pac. 114.

In the case of *Hillebrant v. Manz,* 71 Wash. 250, 128 Pac. 892, we said:

"We have so often held that a court will not be justified in taking from the jury the question of contributory negligence, unless the acts done are so palpably negligent as to preclude the possibility of difference of opinion concerning them, that citation of authority to the point seems unnecessary."

The respondent further argues that, inasmuch as it was dark and rainy at the time the respondent left the cannery tender on his way to the nearby village, it was his duty to equip himself with a light and thereby be enabled to return to his boat without the likelihood of being injured; or that it was his duty to have procured a light before he left the village of Kasaan; or that it was his duty on his return at midnight, to have applied at the mess house for a light before undertaking to reach his boat; that he failed to sufficiently try the doors leading into the east side of the

cannery, and that he should have passed through the cannery rather than around the dock; that he was negligent in not inquiring of the night watchman for a lantern or some other means with which to illuminate his way; and that, by reason of his carelessness in these particulars, it became the duty of the court to enter judgment in favor of the respondent notwithstanding the verdict.

But when we take into consideration that the appellant's work kept him almost continuously on the boat and very seldom on the dock; that he had no actual previous knowledge of the condition of the dock at the place where he fell; that he had a right to pass over the dock going from and returning to his boat; that he had walked a distance of approximately 560 feet on the dock around the warehouse and along the side of the cannery without any mishap until he came to that portion of the dock which, according to his contention, was covered with slippery moss, slime and fish scales; the fact that the ''Little Glory'' had never previously been tied up at the fish house over night, and that the appellant had never previously walked over this portion of the dock; the fact that the boat was his sleeping place; the fact that it was optional with him what route he would select to reach the boat; in view of all these and many other facts disclosed by the evidence, we cannot hold, as a matter of law, that there was neither evidence nor reasonable inference from evidence to justify the verdict.

It has been uniformly held by this court that a motion for judgment notwithstanding the verdict involves no element of discretion.

''A judgment notwithstanding the verdict, in such a case, should only be granted by the trial court where it can say, as a matter of law, that there is no evidence or reasonable inference sufficient to sustain the ver-

dict, and that reasonable men could not reach such a conclusion upon the evidence." *Reynolds v. Morgan,* 134 Wash. 358, 235 Pac. 800.

■ Much space is devoted in the briefs of counsel for the respective parties to a discussion of the workmen's compensation act, and its possible application to the situation disclosed by the evidence in the present case. We hold that the provisions of the workmen's compensation act have no application. No such issue was raised either in the pleadings or by the evidence. The trial judge, in giving his reasons for granting judgment n. o. v., ignored the matter entirely. In any event, it appears that the appellant was employed as a seaman, and at the time of his injury was away from his ship, absent with leave, engaged in a private mission of his own. The protective arm of the workmen's compensation act is limited to injuries sustained in the course of the employment.

. The judgment of the superior court is reversed and the cause remanded, with directions to pass upon the motion of the respondent for a new trial. *Jackson v. Mitsui & Company,* 132 Wash. 395, 232 Pac. 317. In the event the motion for a new trial is denied, then judgment shall be entered for the appellant upon the verdict of the jury.

MILLARD, MITCHELL, HOLCOMB, PARKER, and HERMAN, JJ., concur.

TOLMAN, C. J. (dissenting)—I am unable to find in the record any sufficient evidence of negligence on the part of the respondent to carry the case to the jury.

The sole asserted cause of appellant's fall is that the dock planking or walk was slippery. It is not alleged in his amended complaint, or claimed in his testimony, that he fell because of the absence of a rail-

ing or because of any structural or concealed defect. His sole claim is that the dock planking was slippery.

While the testimony is somewhat at variance in the terms used with reference to this slipperiness, it does not, in my judgment, present an issue of fact. The different terms used by the different witnesses all amount to the same thing, i. e., that the dock was slippery, or very slippery, by reason of the frequent falling of rains and the dripping of rain water from the eaves; that this condition was a condition common to all docks in Alaska (which, from their nature, are, and must be, uncovered in order to be used for dock purposes), and existed more or less throughout the whole dock apparently in about the same degree that it did at the point where the accident occurred. There was nothing in the condition shown which would lead a reasonably prudent man to anticipate that danger existed, or that an accident might occur from the slipperiness to one properly using the dock as a walk.

This condition was well known to the appellant, and was by him described as being the same condition which existed on all similar docks in Alaska.

In my opinion, therefore, the judgment appealed from was right and should be affirmed.

MAIN and BEALS, JJ., concur with TOLMAN, C. J.